VAN DYCK PRINTING COMPANY *v.*
ANTHONY F. DINICOLA

SUPERIOR COURT     JUDICIAL DISTRICT OF   FILE NO. CV87-262631
NEW HAVEN

Memorandum filed August 11, 1993

*Jacobs, Grudberg, Belt & Dow,* for the plaintiff.
*Gordon Alan Evans & Associates,* for the defendant.

HODGSON, J. The plaintiff, Van Dyck Printing Company, brings the present action seeking money damages from the defendant, Anthony F. DiNicola, for breach of a covenant not to compete after the termination of his employment with the plaintiff. Because the plaintiff's claim concerning the covenant at issue applied to a two year period commencing in April, 1987, the plaintiff's request for injunctive relief has become moot.

The defendant denies breach of his employment agreement and raises as a special defense that the cov-

enant not to compete was unenforceable because the plaintiff had breached the employment agreement over the years by unilaterally changing its terms to suit itself. The defendant has filed a counterclaim alleging that the employer has failed to pay commissions due the plaintiff from his employment under the terms of the employment agreement.

The court finds the facts to be as follows. On March 11, 1968, the defendant, who had been a pressman at Columbia Printing Company for thirteen years and at another printing company for several months, was hired by the plaintiff to work as a salesman. The defendant was acquainted with the plaintiff's president, Leonard Drabkin, who had been a salesman at Columbia Printing Company and who had left that company to purchase an interest in and to operate Van Dyck Printing Company. When the plaintiff agreed to hire the defendant to work as a printing salesman, a role the defendant had never before performed, the only settled features of the employment relationship were that there would eventually be a written contract, that the plaintiff would include in the contract some sort of protection in return for starting the defendant in the new career as a salesman, and that the compensation package would include a car allowance, a $150 per week draw against earned commissions, a commission schedule that would be no lower than 7 percent on the first $100,000 of sales and that would increase for sales in excess of $100,000 as an incentive to the defendant to sell more printing services to the plaintiff's customers, and some share in profits. When the defendant began work for the plaintiff, no agreement had been reached as to the precise amount of the commission rate for sales in excess of $100,000. The defendant had been earning a salary of $14,000 per year in his employment as a pressman at Columbia Printing Company.

Approximately four weeks after the defendant started work for the plaintiff, Drabkin presented him with an employment agreement, which the defendant inspected and signed. The contract provided for the expected $150 per week draw and the expected car allowance. As to commissions, it provided for a 7 percent commission on quarterly sales over $25,000, a 7.5 percent commission on sales over $37,000, an 8 percent commission on sales over $50,000, and an 8.5 percent commission on sales over $75,000. The agreement also provided for an annual profitability bonus of 12.5 percent of the difference between the total sales prices and total "production cost factor" of the printing jobs sold by the defendant.

The contract contained the following covenant not to compete: "14. For a period of twelve months after termination of . . . this agreement, the Employee will not, within the State of Connecticut directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business, or the sales of goods or services in any way similar to the type of business conducted by the Employer at the time of the termination of this agreement. In this regard, it is recognized by both parties that the reasonable scope of Employer's present operations are at least throughout the State of Connecticut provided; however, that any activity described in this paragraph shall not be deemed a violation hereof so long as said business, similar in type to the business conducted by the Employer, does not handle, service or sell during said twelve month period, printing or related goods or services to any account or customer of the Employer, which account or customer was handled, serviced or sold by the Employer at any time during the effective life of this agreement; further provided, however, should Employee be employed, by

a business similar to that conducted by Employer, as a pressman or in another inside capacity, and he does not deal with, service or otherwise contact any customer or account of Employer, it shall not be deemed a breach of this paragraph. In the event of a violation by Employee of the provision of this paragraph, the Employer shall be entitled to an injunction restraining Employee from continued participation in said similar type of business. Should Employee breach any of the provisions [of] this paragraph, said twelve month period shall be lengthened to a twenty-four month period and shall be enforceable for such a twenty-four month period by an injunction. Nothing herein shall be construed as prohibiting the Employer from pursuing any other remedies available to Employer for said violation, including the recovery of damages from Employee." The agreement provided, in paragraph 13, for termination by either party on one month's written notice.

The defendant worked as a salesman for the plaintiff from 1968 to 1987. In approximately February, 1987, the defendant and another employee, Sam C. Lindberg, approached Drabkin with an idea of starting a business that would act as a buying service for consumers of printing services. Lindberg had no written employment contract with the plaintiff. Drabkin said he was not interested in participating either as an owner of the proposed new venture or as a supplier of printing services to its customers. Under the impression that the defendant was leaning toward leaving with Lindberg to start the new venture described to him, Drabkin, as president of the plaintiff, sent the defendant a letter giving him one month's written notice of termination and reminding him of the covenant not to compete. In the letter, Drabkin invited the defendant to reconsider any plan to leave.

The defendant left the plaintiff at the end of April, 1987, and within one week was selling to the plaintiff's customers the services of Image Development, Inc. (Image), a company in which he was an equal shareholder with Lindberg. Image's business was soliciting from users of printing services information concerning their needs for printed products, securing bids from various printers, placing and supervising production of the projects, and billing the products to the customers, with a mark-up for their efforts. Image also supplied consulting services to customers as to technical features of printing jobs.

In the course of his employment at Image, the defendant had as customers four businesses that had been his own sales accounts when he was employed by the plaintiff: Hubbard/Brassil Advertising, Echlin, Inc., Insight, Inc., and McLaughlin, DelVecchio & Casey. The defendant ceased his employment with and sold his equity interest in Image in 1989, leaving Lindberg as sole owner.

The first issue for the court is the enforceability of the written employment agreement relied on by the plaintiff. That issue has several parts: whether the agreement was ever valid, having been signed after employment began; whether it is too broad in its scope to be enforceable; and whether, if initially valid, the contract became unenforceable because of a prior breach or abandonment of its terms by the plaintiff.

The defendant argues that an employee who has already commenced employment and receives no additional consideration for signing a covenant not to compete is not subject to enforcement of the covenant, because past consideration cannot support the imposition of a new obligation. *Dick* v. *Dick,* 167 Conn. 210, 355 A.2d 110 (1974). This general proposition is not, however, applicable to the situation presented. At the

time the defendant began work, he and the plaintiff had not concluded an agreement concerning the terms of his employment. They had, rather, agreed on some items and left open some others—notably, the precise commission rate and the nature of the "protection" to be obtained for the plaintiff for entrusting a sales role to the defendant. When the plaintiff presented the defendant with the proposed written contract, no completed contract was already in place. Because the defendant was expected simply to take a $150 weekly draw while the actual commission schedule was being worked out, and because, as a new and untrained salesman, he was not expected to start generating commissions immediately, the fact of his presence at work does not signify, as in other cases, the completion of an agreement. The defendant himself testified that he had begun work without all features of his employment having been clearly formulated. This case does not resemble the situation presented in *National Safe Northeast, Inc.* v. *Smith,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 304189 (December 31, 1985), in which an employee who had been working for one year was asked to sign a covenant not to compete as a condition of continued employment, a circumstance found to entail no new consideration for the new obligation.

Even if the parties were construed to have reached a complete agreement before the defendant started work, however, the enhanced commission rate, described above, would constitute new consideration for the covenant not to compete.

The defendant further claims that the covenant not to compete is unenforceable because it is overbroad in scope. By its terms, the covenant restricts the defendant from competing with the plaintiff for one year, with a penalty of an additional year for violation. While the area of restriction is stated to be the entire state of

Connecticut, this scope is limited, by later clauses of the covenant, to competition for sales or services to the employer's actual customers. The Connecticut Supreme Court supplied in *Scott* v. *General Iron & Welding Co.*, 171 Conn. 132, 137, 368 A.2d 111 (1976), the standard for assessing the enforceability of a covenant not to compete: "In order to be valid and binding, a covenant which restricts the activities of an employee following the termination of his employment must be partial and restricted in its operation 'in respect either to time or place . . . and must be reasonable—that is, should afford only fair protection to the interest of the party in whose favor it is made and must not be so large in its operation as to interfere with the interests of the public. *Cook* v. *Johnson*, 47 Conn. 175, 176 [1879]; *May* v. *Young*, 125 Conn. 1, 5, 2 A.2d 385 [1938]; *Samuel Stores, Inc.* v. *Abrams*, 94 Conn. 248, 253, 108 A. 541, 9 A.L.R. 1450 [1919].' *Torrington Creamery, Inc.* v. *Davenport*, 126 Conn. 515, 519–20, 12 A.2d 780 [1940]; see *Oregon Steam Navigation Co.* v. *Winsor*, 87 U.S. (20 Wall) 64, 66–67 [1874]."

In a subsequent ruling, *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, 208 Conn. 525, 546 A.2d 216 (1988), the Supreme Court indicated that time and geographical restrictions are to be reviewed as intertwined considerations when a determination is made on the reasonableness of the limitations of an employee's post-termination activities. A restriction covering a large area might be reasonable if in effect for a brief time, while a restriction covering a small area might be reasonable for a longer time. Here, as in *New Haven Tobacco Co.* v. *Perrelli*, 18 Conn. App. 531, 536–37, 559 A.2d 715, cert. denied, 212 Conn. 809, 564 A.2d 1071 (1989), the area consisting of the plaintiff's actual customers is not overbroad. The plaintiff had the legitimate goal of allowing a period during which he could

restaff his sales force to serve the customers formerly serviced by the defendant without losing the accounts to the appropriation by the defendant of the accumulated goodwill and familiarity built up by the plaintiff as his employer.

The defendant has failed to prove that the covenant at issue is unenforceable because of overbreadth.

The defendant's remaining claim of unenforceability is that the plaintiff unilaterally changed the terms of employment over the years and that those changes constituted either an abandonment of the written employment agreement or a prior breach that rendered the agreement unenforceable by the plaintiff. Specifically, the defendant claims that the plaintiff consistently failed to pay his commissions within forty-five days, as specified by the contract, that it changed the cost factors that were applied to calculation of the profitability bonus by creating a charge for "value added" functions that were sent out for performance by subcontractors, that it refused to pay commissions on accounts that were not paid by the customer, and that it added to his duties and reduced his territory.

The defendant did not identify any account of his to which the "value added" calculation had been applied. Because the employment agreement is not specific as to how commissions are to be calculated—whether on sales at the time of sale, with or without charge-backs for unpaid billings, or at the time of receipt of payment for sales—the refusal of the plaintiff to pay commissions on sales for which payment was not received cannot be characterized as a breach of the contract. Because the contract did not specify a territory or a job description, changes in this regard cannot be construed as breaches of contract, nor can calculations of cost, because the contract does not bind the plaintiff to a particular method of calculation.

The defendant identifies late payment of commissions as a breach. Only where a party seeking to enforce a contract is in *material* breach will that party be denied enforcement of the contract. *Bernstein* v. *Nemeyer,* 213 Conn. 665, 666–67, 570 A.2d 164 (1990); *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 147, 328 A.2d 711 (1973); *Silliman Co.* v. *Ippolito & Sons, Inc.,* 1 Conn. App. 72, 75, 467 A.2d 679 (1983), cert. denied, 192 Conn. 801, 470 A.2d 1218 (1984).

The evidence established that when commission calculations were delayed, the plaintiff advanced lump sums to the defendant on an interest-free basis. Moreover, the defendant's failure to enforce the contract over what he described as an extended record of failure to pay within forty-five days leads the court to conclude that any breach in this regard was waived by the defendant. *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden,* 169 Conn. 177, 363 A.2d 135 (1975); *Bradley Novelty Co.* v. *Technomatic, Inc.,* 142 Conn. 166, 112 A.2d 214 (1955).

The court concludes that any deficiencies in the performance of the plaintiff with regard to the defendant's employment contract either were not material or were waived by the defendant, who never took steps to enforce the contract's provisions but who continued to expect to be paid according to the commission schedule provided in the contract, and never treated the contract as not being in effect. The only proven breach of the plaintiff's duty to pay commissions occurred after the defendant's breach, not before it.

In summary, the court does not find that the contract into which the defendant entered in 1968 was proved to be unenforceable for any of the reasons claimed.

The court finds that the defendant breached the non-competition agreement set forth above. He argues that his ownership of and work for a company offering ser-

vices to consumers of printing services was not prohibited by the terms of the agreement. In fact, that agreement prohibits involvement in the "sales of goods or services in any way similar to the type of business conducted by the Employer" and, more specifically, the handling, servicing or selling of printing or related goods and services to customers of the employer. Just as he did as a salesman for the plaintiff, the defendant, in his work for Image, ascertained the needs of consumers of printing services, filled those needs through a supplier, and received payment for doing so. The only real difference in the defendant's role with Image was that instead of placing all orders with one printer, he placed them with different printers to obtain the best combination of services and price for the customer. The shift in focus thus described does nothing to change the essential fact that the defendant was helping the plaintiff's customers procure their printing from sources other than the plaintiff. The court finds this activity to be similar in significant ways to the type of business conducted by the employer, which included solicitation of sales as well as production. The court finds that the breach occurred from April 8, 1987, through the twelve month period for which the defendant had agreed not to compete. (The period was to be lengthened to two years only for purposes of injunctive relief, according to the terms of the covenant.)

Damages for breach of a covenant not to compete are measured by the loss suffered by the enforcing party. *Robert S. Weiss & Associates* v. *Wiederlight,* supra, 208 Conn. 542. Drabkin testified that the plaintiff's volume of sales fell by $600,000 in fiscal year 1987 (May 1, 1987, through April 30, 1988), as compared to fiscal year 1986, the last year of the defendant's employment with the plaintiff. The court cannot infer that all of this loss of volume was from customers with whom Image did business, rather than from a drop in

demand for printing services. The court does, however, infer that those customers of the plaintiff who ordered printing services from the defendant from April 8, 1987, through April 8, 1988, were certainly in the market for printing services and that the amount they ordered from Image can be assumed to be an amount that reduced the plaintiff's sales volume. The court finds those amounts to be as follows:

| | | |
|---|---|---|
| Hubbard/Brassil Advertising | $ 59,416.00 | (exclusive of sales tax) |
| McLaughlin, DelVecchio & Casey | 81,376.67 | (exclusive of sales tax) |
| Automotive Controls Div. of Echlin, Inc. | 28,211.02 | (exclusive of sales tax) |
| TOTAL | $169,003.69 | |

Drabkin testified that the plaintiff earned a profit of 10 percent after deduction of all fixed and variable costs, but that the marginal rate of profit was higher depending on the volume of sales, because after fixed costs were met, subsequent volume created higher profit, claimed to be 48 percent. The court finds no basis, however, to calculate lost profit as though none of the fixed costs should be ascribed to the approximately $170,000 of business at issue. Since profitability is higher when fixed costs are distributed over a larger volume of business, however, the court calculates that the plaintiff's profit on the $169,003.69 would have been the 35 percent that the defendant testified was the profit figure the plaintiff claimed in calculating his share of profitability, that is $59,151.29. The plaintiff is entitled to recover damages from the defendant in that amount as to the proven breach of the covenant not to compete.

In his counterclaim, the defendant alleges that from 1984 until his termination in 1987, the plaintiff failed to pay commissions on all sales for which it received payment from customers on accounts for which the

defendant was the salesman. The defendant adduced evidence of no failure to pay full commissions as to any particular transaction until the time of the plaintiff's accounting for sales he had made but for which payment had not yet been received from the customer as of the date of his termination. The court finds that the plaintiff deducted from his commissions a payment of $3273.75 that it had made as to a sale to U.S. Repeating Arms on the ground that the bankruptcy court might order return of the customer's payment. The plaintiff did not prove that any such repayment was ever made, and it therefore had no basis for taking back the defendant's commission.

The defendant also testified that the plaintiff paid him one half of the commission, rather than the full commission as to two of his 1987 sales to Echlin, Inc., purchase orders No. 5595 and No. 5611. The plaintiff took the position that since another salesman had to service those orders after the defendant left, the defendant was entitled only to one half of the commission. The employment contract between the parties contains no requirement that the defendant both obtain the sale and provide service with regard to production and delivery, and the court received no evidence that such an approach to the final commissions of sales people was an industry practice or a practice generally applied by the plaintiff or that any other employee was paid the remainder of the commission. The court finds that the defendant was entitled by the terms of his contract to 8.5 percent of the total of those sales, $18,777, not to that percentage of one half of this total, as paid by the plaintiff.

Accordingly, the court finds that the defendant has proved the allegations of his counterclaim to the extent of $4071.77 ($3273.75 plus 8.5 percent of $9388.50).

Judgment shall enter in favor of the plaintiff as to its complaint in the amount of $59,151.29. Judgment shall enter in favor of the defendant as to his counterclaim in the amount of $4071.77.

The plaintiff shall recover its court costs.