The plaintiff, Russo Associates, Inc. (Russo Associates), filed a four count complaint against the defendants, Joseph Cachina and Kevin Daly.[1] Count one and three allege that Cachina breached a covenant not to compete. Count two alleges that Cachina violated Connecticut Uniform Trade Secrets Act, General Statutes § 35-50 et seq. Count four alleges that Cachina has violated the Connecticut Unfair Trade Practice Act, General Statutes § 42-110a et seq.
A trial was held before an attorney trial referee. On December 3, 1993, the referee filed his report. On December 20, 1993, Russo Associates filed a motion to correct the referee's report. In a response, which is dated October 12, 1994.[2] the referee declined to change his report. On November 2, 1994, Russo Associates filed an objection to judgment on the referee's report. In this objection, Russo Associates renewed many objections that it had made in its December 20, 1993 motion. Cachina answered those objections and filed a motion for judgment on the referee's report. CT Page 529
In his two reports, the referee found the following facts: In April, 1988, Russo Associates hired Cachina to work for a subsidiary corporation to be known as Compu-Draft, Inc. At the time of hiring, Russo Associates informed Cachina that he would have to execute an "employment agreement," the terms of which had not been established. Cachina's responsibility was to develop a computer assisted design (CAD) training course.
On June 1, 1988, Cachina executed a document entitled "contract." The parties did not offer evidence that consideration was given for executing this document and the document does not state any consideration within it.
In late Winter of 1989 or early Spring of 1990, Compu-Draft unsuccessfully solicited a job from Bristol Hospital. This job involved CAD work. Cachina helped Compu-Draft to develop the bid that was submitted to Bristol Hospital.
After Cachina left Compu-Draft in June, 1990, Data-Draft, Inc., whose vice-president was Cachina, obtained the Bristol Hospital job. Its successful bid was identical to the bid that Compu-Draft had submitted.[3]
Based on these facts, the referee made the made the following conclusions of law: (1) the contract executed by Cachina was unenforceable because it lacked consideration; (2) the restrictive covenant in the contract was unenforceable because the covenant covered too large a geographic area for too long a time period; (3) Russo Associates failed to establish that Cachina misappropriated any trade secrets; and (4) Russo Associates failed to demonstrate a violation of Connecticut's Unfair Trade Practice Act.
In its objection to judgment on the referee's report, Russo Associates challenges the conclusion that no consideration supported Cachina's promise not to compete. Russo Associates has not objected to the referee's finding regarding trade secrets or Connecticut's Unfair Trade Practice Act.
"The report of a [referee] shall state . . . the facts found and the conclusions drawn therefrom . . . . The report should ordinarily state only the ultimate facts found . . . ." Practice Book § 434. When a party challenges the facts in an attorney trial referee's report, the trial court will not "correct a finding of fact unless a material fact has been found CT Page 530 without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Bowman v. 1477Central Avenue Apartments, Inc., 203 Conn. 246, 253 n. 7,524 A.2d 610 (1987), quoting Practice Book § 439; see Whewell v.Ives, 155 Conn. 602, 608-09, 236 A.2d 92 (1957) (holding that trial court did not err in rejecting plaintiff's claim that the referee's report was against the weight of the evidence).
"A party may file objections to the acceptance of the report on the grounds that conclusions of fact stated therein were not supported by the subordinate facts found, or that the referee erred in his rulings. Practice Book § 440." Bernard v.Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171 (1989).
 I
In its objection to the referee's report, Russo Associates argues that the referee erred in concluding that the document executed by the parties was unenforceable as a contract because it lacked consideration. In support of its position, Russo Associates cites Van Dyck Printing Co. v. DiNicola,43 Conn. Sup. 191, 648 A.2d 898 (1993), aff'd, 231 Conn. 272,698 A.2d 877 (1994). In his answer to Russo Associate's objection and in his motion for judgment, Cachina contends that Van Dyck is distinguishable.
The sufficiency of consideration is a question of law based upon the evidence. Town Bank Trust Co. v. Benson,176 Conn. 307-08, 407 A.2d 971 (1978). "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. E. Farnsworth, Contracts (1982) § 2.9, p. 89; A. Corbin, Contracts (1963) § 193, p. 188." D'Ulisse-Cupo v. Boardof Directors of Notre Dame High School, 202 Conn. 206, 213,520 A.2d 217 (1987). In an employment contract, "past consideration" does not make a promise enforceable. Dick v. Dick,167 Conn. 210, 224, 355 A.2d 110 (1974).
The facts in this case as found by the referee indicate that there was consideration was for Cachina's promise not to compete. Paragraph 5 of the referee's report states that "[a]t the time of this hiring [in April 1988] Russo Associates, Inc. informed Cachina that he would be required to execute an
`employment agreement' but the terms of this agreement had not yet been established." Paragraph 8 states that "[o]n June 1, CT Page 531 1988 Cachina executed a document entitled `contract.'"
In concluding that no consideration exists to support the "contract," the referee overlooked the temporal proximity between Cachina's hiring and his signing of the employment agreement. Because Cachina signed this document so soon after his hiring, and because, as the referee found, Cachina knew at the time of his hiring that he would later be required to execute an employment agreement, there was consideration for that agreement. The consideration that Cachina received for agreeing to the covenant not to compete was his employment with Russo Associates. The two events are sufficiently contemporaneous that no other conclusion is reasonable.
This case is comparable to Van Dyck Printing Co v.DiNicola, supra, 43 Conn. Sup. 191. In Van Dyck Printing Co., the court enforced a covenant not to compete that had been signed about one month after the employee started working for the employer. Ibid. In finding that consideration supported the promise not compete, the court relied on the following facts. "When the [employer] agreed to hire the [employee] to work as a printing salesman, a role the [employee] had never before performed, the only settled features of the employment relationship were that there would eventually be a written contract, that the [employer] would include in the contract some sort of protection in return for starting the [employee] in the new career as a salesman, and that the compensation package would include [certain features]." Id., 192. In the present case, the facts indicate that Cachina also signed a covenant not to compete shortly after he began work when the parties anticipated 2 further agreement. Cf. Fowler v. Weiss,15 Conn. App. 690, 695, 546 A.2d 321, cert. denied, 209 Conn. 814,550 A.2d 1082 (1988) (holding that a binder is not an enforceable contract for sale of real estate when the parties expected to execute another "formal" contract). The court concludes that consideration supported Cachina's covenant not to compete.
 II
Having concluded that an enforceable contract existed between the parties, we now turn to the validity of the covenant not to compete within that contract. According to the referee's finding, Cachina's contract provided: "Cachina agrees that no time during the term of this agreement or for a period of two (2) years after termination or resignation hereunder will CT Page 532 Cachina engage in a similar activity to the computerized drafting program under this contract within a 75-mile radius of Fairfield, Connecticut, either directly or indirectly." The referee found that the covenant was unreasonable. The court agrees.
A covenant that restricts the activities of an employee following the termination of his employment is valid and enforceable if the restraint is reasonable. Scott v. GeneralIron Welding Co., 171 Conn. 132, 137, 368 A.2d 111 (1976); NewHaven Tobacco Co v. Perrelli, 18 Conn. App. 531, 533,559 A.2d 715 (1989). "The five factors to be considered in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are: (1) the length of time the restriction operates; (2) the geographic area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests. Scott v. General Iron Welding Co., 171 Conn. 132,137, 368 A.2d 111 (1976); New Haven Tobacco Co. v. Perrelli,11 Conn. App. 636, 638-39, 528 A.2d 865 (1987)." Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 529 n. 2,546 A.2d 216 (1988). "The five prong test of Scott is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." New Haven Tobacco Co. v. Perrelli, supra, 534. "In . . . Robert S. Weiss Associates, Inc. v. Wiederlight,208 Conn. 525, 546 A.2d 216 (1988), the Supreme Court indicated that time and geographical restrictions are to be reviewed as intertwined considerations when a determination is made on the reasonableness of the limitations of an employee's post-termination activities" Van Dyck Printing Co. v. DiNicola,
supra, 43 Conn. Sup. 197.
"[T]he application of a restrictive covenant will be confined to a geographic area which is reasonable in view of the particular situation." Scott v. General Iron Welding Co., supra, 171 Conn. 133.
The seventy-five mile restriction is unreasonable. The court takes judicial notice that seventy-five miles from Fairfield, Connecticut includes New York City, all of Connecticut except a small portion (consisting of small towns such as Brooklyn, Putnam, Killingly and Thompson) in the northeast corner, and parts of Massachusetts. Lloyd Elliot v.CT Page 533Parke, 114 Conn. 12, 14, 157 A. 272 (1932); Nesko Corp v.Fontaine, 19 Conn. Sup. 160, 162, 110 A.2d 631 (1955). The referee's report indicates that Russo Associates did not prove why it was reasonable to prevent Cachina from participating in CAD activities in virtually the entire state.
The expanse of the geographic area distinguishes this case from other cases in which courts have found a two year restriction to be valid. See Robert S. Weiss Associates, Inc.v. Wiederlight, supra, 208 Conn. 531 (upholding a covenant not to compete that prevented an employee, for two years, from soliciting former clients and from working within ten miles of Stamford, Connecticut); Torrington Creamery, Inc. v. Davenport,126 Conn. 515, 12 A.2d 780 (1940) (upholding a covenant not to compete that restricted an employee from working in ten towns where the employer did business); May v. Young, 125 Conn. 1,2 A.2d 385 (1938) (upholding a covenant not to compete that restricted an employee from working for any of the employer's client for two years).
In addition to the unreasonableness of the geographic limitation, the restriction seriously impairs Cachina's ability to continue his profession. This restriction bars Cachina from practicing his profession for two years in his home state (except for a relatively small rural area). The referee aptly observed that the computer field changes rapidly and that a two year hiatus from working in the CAD field would exclude Cachina from the developments in the field. If the covenant were enforced, Cachina would be extremely disadvantaged when he reentered the competitive Connecticut CAD environment in two years. The restrictive covenant is against public policy and is, therefore, unenforceable.
Russo Associates's objection to the referee's report is overruled. Pursuant to Practice Book § 442,[4] the court grants Cachina's motion for judgment on the referee's report.