[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, KX Industries, L.P. (KXI), seeks a temporary injunction against the defendant, Bruce Saaski, a former employee of KXI.
On May 10, 1996, KXI filed an eight count verified complaint against Saaski[1] along with, inter alia, an application for an CT Page 9608 ex parte temporary injunction. KXI's application asserts the following representations:[2] Saaski was employed by KXI as KXI's Technical Support Manager until April 24, 1996.[3] In this capacity, Saaski obtained confidential and i proprietary information belonging to KXI with respect to KXI's current and prospective customers, material sources, research and development of KXI's product and manufacture and testing of KXI's product.[4] Saaski's employment agreement contained a covenant not to compete (restrictive covenant) which prohibited Saaski from using or disclosing such confidential and proprietary information without the prior written consent of KXI; from maintaining possession of any materials, and copies thereof, containing any confidential information after Saaski ceased employment with KXI; and, from working for, or rendering services to, any competitor in any line of work or activity in which Saaski was engaged during any part of his last two years of employment with KXI, for a period of one year from the date of Saaski's cessation of employment with KXI.[5]
On May 10, 1996, the court, DeMayo, J., issued an ex parte temporary injunction commanding and enjoining Saaski from: (a) disclosing, utilizing or disseminating KXI's trade secrets and other confidential information, as defined in his employment agreement, and any other trade secret, confidential or proprietary information of KXI; (b) working for or rendering services to any competitor of KXI, or acquiring or holding any financial interest in a competitor, until August 24, 1997; (c) retaining KXI's trade secrets and other confidential information and proprietary information and material, and any reproductions of the same, whether stored/or recorded on paper, electronic or computer media of any form (e.g, hard disk, diskette, cartridge) or in any other manner; and ordering Saaski (d) to return to KXI all such confidential and proprietary information and material within two business days of service of this order. DeMayo, J., further ordered that this "Ex Parte Temporary Injunction shall continue in effect until further order of this Court, pending a hearing on [KXI's] Application for Temporary Injunction and Order to show Cause . . ." (Emphasis in original). DeMayo, J, ordered that Saaski appear on June 10, 1996, to show cause why the temporary injunction, as applied for,[6] should not issue.
On June 10, 1996, counsel for KXI and Saaski appeared before the court, Booth, J. At that time, the parties represented that they were attempting to resolve this matter amicably and consented to Judge Booth's marking the matter "off unless it's CT Page 9609 reclaimed."
On April 4, 1997, KXI filed a motion for an order of contempt. KXI sought to have Saaski held in contempt of court for failing to comply with the terms of the ex parte injunction issued June 10, 1996 by DeMayo, J., based upon Saaski's employment with Water Safety.[7] Water Safety is a competitor KXI. Thereafter, on August 13, 1997, the court,
Meadow, J., found Saaski in contempt of court and ordered that Saaski cease working for Water Safety[8] The court, Meadow, J, also ordered a hearing as provided on June 10, 1996, on the validity of the restrictive covenant contained in Saaski's employment agreement because there had ever been a hearing on the merits of the ex parte temporary injunction issued by Judge DeMayo.[9]
 DISCUSSION
A. Consideration
As an initial matter, the court must determine whether the covenant not to compete agreement is supported by sufficient consideration. Saaski argues that prior to executing the employment agreement, he and KXI entered into a contract of employment for a term of two years. Saaski contends that KXI was already obligated to employ him pursuant to such prior contract. and therefore the later employment agreement (not compete) is not supported by valid consideration KXI vehemently denies that it entered into a prior written contract for a term of employment with Saaski. KXI maintains that the contract existing between itself and Saaski is the employment agreement, (Exh. I) dated December 9, 1993.
The employment agreement provides that "I [Saaski] am about to commence or have recently concerned employment with KX Industries L.P . . . I acknowledge that I have been advised that the execution and delivery of this Agreement is a condition of my employment Accordingly, in consideration of my employment and/or continued employment by the Company [KXI] as well as to induce the Company to afford me access to Confidential information. I agree as follows . . ."
Whether a contract is supported by sufficient consideration is a question of law based upon the evidence. Town Bank TrustCT Page 9610Co v. Benson, 176 Conn. 304, 307-08, 407 A.2d 971 (1978). "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. E Farnsworth, Contracts (1982) § 2.9, p. 89; A. Corbin, Contracts (1963) § 193, p. 188." D'Ulisse-Cupo v. Board of Directors of Notre Dame HighSchool, 202 Conn. 206, 213, 520 A.2d 217 (1987). In employment contracts, "past consideration" does not make a promise enforceable. Dick v. Dick, 167 Conn. 210, 224, 355 A.2d 110 (1974). A promise to do that which one is already bound to do does not constitute valid consideration for a new agreement. ThermoglazeInc. v. Morningside Gardens Co., 23 Conn. App. 741, 745-46,583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991).
Saaski has not demonstrated that he and KXI ever reached an agreement or entered into a contract for a term of employment for two years. The present case is similar to Van Dyck Printing Co.v. DiNicola, 43 Conn. Sup. 191, 648 A.2d 898 (1993). In Van DyckPrinting Co. v. DiNicola, the court enforced a covenant not to compete that had been entered into approximately one month after the employee started working for the employer. Id. The court reasoned that the covenant not to compete was supported by sufficient consideration because "[a]t the time the defendant began work, he and the plaintiff had not concluded an agreement concerning the terms of his employment. They had, rather, agreed on some items and left open some others. When the plaintiff presented the defendant with the proposed written contract, o completed contract was already in place" Id. 195-96; see alsoRusso Associates Inc. v. Cachina, Superior Court, Judicial District of Fairfield, Docket No. 27 69 10 (March 1, 1995, Levin, J.) (When determining whether a restrictive covenant in the employment context is supported by sufficient consideration, the court must consider the temporal proximity between the employee's hiring and the signing of the employment agreement.)[10]
Moreover, where a "preexisting contract of employment is terminable at will, o overt consideration is required to support an otherwise valid covenant not to compete." Daniel v. KeaneAgency, Inc. v. Butterworth, Superior Court, judicial district of New Haven, Docket No. 31 31 81 (February 22, 1995, Levin, J.).
Since Saaski has not demonstrated that he and KXI ever entered into a prior contract of employment for a term of two years, and since Saaski executed the employment agreement shortly after commencing his employment at KXI, the employment agreement is supported by sufficient consideration. CT Page 9611
B. The Temporary Injunction The Restrictive Covenant
"The principal purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." (Internal quotation marks omitted.) Clinton v. Middlesex Mutual AssuranceCo., 37 Conn. App. 269, 270, 655 A.2d 814 (1995) "[T]he requirements for a temporary injunction are . . . establishing a legal right, which involves a determination of the probability of the plaintiff's succeeding on the merits and that there is o other adequate remedy at law; and . . . the imminence of a substantial and irreparable injury to the plaintiff, considered together with the effect of a temporary injunction on the plaintiff and the defendant." Connecticut Assn. ClinicalLaboratories v. Conn. Blue Cross Inc., 31 Conn. Sup. 110, 113,324 A.2d 288 (1973) Furthermore, in Waterbury Teachers Assn. v.Freedom of Information Commission, 230 Conn. 441, 446,645 A.2d 978 (1994), our Supreme Court impliedly acknowledged that the requirements for a temporary injunction are (1) the plaintiff had no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent an injunction; (3) the plaintiff was likely to prevail on the merits; and (4) the balance of the equities favored an injunction. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Advest Inc. v. Wachtel,235 Conn. 559, 562-63, 668 A.2d 367 (1995). The trial court is afforded broad discretion in deciding whether to issue an injunction Bauer v. Waste Management of Connecticut. Inc.,239 Conn. 515, 534, 686 A.2d 481 (1996); Nair v. Thaw, 156 Conn. 445,452, 242 A.2d 757 (1968) ("[T]he issuance of an injunction and the scope and quantum of the injunctive relief rests in the sound discretion of the trier ").
In the present proceeding, the parties have agreed that KXI has o adequate legal remedy and would suffer irreparable harm absent an injunction, thus, the first two requirements for a temporary injunction have been satisfied.[11] Pursuant to this court's order of August 13, 1997, the issue now before the court is the validity and enforceability of the restrictive covenant. As discussed supra, with respect to the requirements for a temporary injunction, this issue falls within the ambit of the third and fourth requirements for a temporary injunction, i.e., that if the restrictive covenant is found to be valid and enforceable, the plaintiff would be likely to prevail on the CT Page 9612 merits and the court would then proceed to balance the equities of issuing an injunction. The inquiry as to the validity and enforceability of the restrictive covenant itself requires a i balancing of the equities between plaintiff and defendant. Scottv. General Iron Welding Co, 171 Conn. 132, 137, 368 A.2d 111
(1976) (To be valid and enforceable, a restrictive covenant "should afford only a fair protection to the interest of the party in whose favor it is made and . . . [t]he interests of the employee himself must also be protected . . ."; Robert S. WeissAssociates inc. v. Wiederlight, 208 Conn. 525, 529 n. 2,546 A.2d 216 (1988) (The factors to be considered in evaluating the enforceability of a restrictive covenant include, inter alia, "the fairness of the protection accorded to the employer . . . [and] the extent on the restraint on the Employee's opportunity to pursue his occupation."). Accordingly, if the covenant is found to be valid and enforceable, KXI will be likely to succeed on the merits and the equities will favor issuing the injunction. Conversely, if the court determines that the covenant is invalid and unenforceable, not only will KXI be unlikely to prevail on the merits, but the equities will also disfavor KXI. Thus, whether the third and fourth requirements for a temporary injunction are satisfied is dependent on whether the covenant is valid and enforceable.
"In order to be valid and binding, a covenant which restricts the activities of an employee following the termination of his employment must be partial and restricted in its operation in respect either to time or place, . . . and must be reasonable — that is it should afford only a fair protection to the interest of the party in whose favor it is made and must not be so large in its operation as to interfere with the interests of the public. The interests of the employee himself must also be protected, and a restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family." (Citations and internal quotation marks omitted.) Scott v.General Iron Welding Co., supra, 171 Conn. 137. Thus, "[t]he five factors to be considered; in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are: (1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." (Citations omitted.) Robert S. Weiss Associates, Inc. v. Wiederlight,
CT Page 9613 supra, 208 Conn. 529 n. 2. "The five prong test of Scott is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." New Haven Tobacco Co. v. Perrelli,18 Conn. App. 531, 534, 559 A.2d 715, cert. denied,212 Conn. 809, 564 A.2d 1071 (1989).
The restrictive covenant in the present case provides: "Until the end of the Non-Competition Period (as herein defined), I will not, except with the prior written consent of an officer of KX Industries L.P.: (i) work for or render services to any Competitor (whether as an employee, consultant or otherwise) in any line of work or activity in which I was engaged at the company during any part of the two years immediately preceding the cessation of my employment with the Company or (ii) acquire or hold any financial interest (whether as partner, stockholder or otherwise) in any competitor. The Non-Competition Period shall run until the date one year after I cease to be an employee of the Company (i.e, until the first anniversary of the date on which I cease to be an employee of the Company). However, if, prior to such first anniversary, I propose to work for or render services to a Competitor, I shall give at least ten days advance notice of my intentions to the Director of Personnel of KX Industries, L.P. If I fail to give such notice, the Non-Competition period shall not end until the date one year after KX Industries L.P learns that I have entered into an employment or consulting relationship with or acquired a financial interest in a Competitor "
1. The Time Geographical Restrictions
The "time and geographical restrictions are to be reviewed as intertwined considerations when a determination is made on the reasonableness of the limitations of an Employee's post-termination activities. A restriction covering a large area might be reasonable if in effect for a brief time, while a restriction covering a small area might be reasonable for a longer time." VanDyck Printing Co. v. DiNicola, supra, 43 Conn. Sup. 197.
a. The Geographical Restriction
"The general rule is that the application of a restrictive covenant will be confined to a geographical area which is reasonable in view of the particular situation." Scott v. GeneralIron Welding Co, supra, 171 Conn. 138. In the present case, the CT Page 9614 restrictive covenant states o specific geographic boundaries, rather it prohibits Saaski from working for any competitor of KXI. The employment agreement defines a competitor as "any organization or person engaged in, or about to or planning to become engaged in, research, development, production, marketing, leasing or selling of a Competing Product." The employment agreement defines a competing product as "any product or process in existence or under development which is the same as, or similar to, or competes with, any product or process (i) which the Company manufactures, sells or licenses, or (ii) to which the Company has devoted a significant research or development effort and plans to manufacture, sell or license."
Because the definition of competing product is ambiguous regarding what is meant by "similar to, or competes with," the court heard parol evidence on the issue.[12] Dr. Evan Koslow, Ph.D., the CEO of KXI, testified that KXI manufactures and distributes solid carbon block water filters nationally and internationally. Dr. Koslow further testified that KXI has only four competitors for whom Saaski would be prohibited from working pursuant to the employment agreement. These four competitors are Honeywell, Water Safety, Culligan and Multipure. These four companies are competitors of KXI because they all manufacture and distribute solid carbon block water filters that are early identical to the filters manufactured by KXI. Finally, Dr. Koslow testified that Saaski would not be prohibited from working for a myriad of other companies in the water purification industry. The court finds that the instant geographic restriction is reasonable under the circumstances. See Robert S. Weiss Associates v.Wiederlight, supra, 208 Conn. 531-32 (A restrictive covenant that fixes the geographical scope of the covenant by prohibiting an employee from soliciting accounts of his former employer was reasonable under the circumstances.)
Furthermore the present case is similar to Aetna RetirementServices, Inc. v. Hug, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 47 99 74 (June 18, 1997, Holzberg, J.). In Aetna Retirement Services, Inc. v.Hug, Aetna Retirement Services (ARS) applied for a temporary injunction prohibiting its former Head of Sales, Hug, from working for a competitor (The Equitable life Assurance Society of the United States) in violation of a restrictive covenant. The restrictive covenant therein provided that Hug could not "become associated, whether as a principal, partner, employee, consultant or shareholder . . . with any entity that is actively engaged in CT Page 9615 any geographic area in any business which is in substantial and direct competition with the business or businesses of [ARS] for which you provided substantial services during the two years prior to the termination of your employment." Hug argued that the restrictive covenant as drafted was too broad, and unenforceable, because it would prohibit him from working for any company that sold financial products and services. The court held that the restrictive covenant only prohibited Hug from working for the direct and substantial competitors of ARS and could not be read so broadly as to bar Hug from employment at other financial services institutions. The court concluded that "the geographic scope [of the restrictive covenant] is reasonable in light of [ARS'] business throughout the United States" Id.
The geographic restriction in the present case is reasonable because it too is narrowly limited to the four direct competitors of KXI. Also KXI is a national and international product.
b. The Time Restriction
Here, the restrictive covenant provides two interrelated time restrictions. First, the j restrictive covenant provides that the non-competition period runs for one year from the date that Saaski ceases to work for KXI. A one year time restriction is reasonable. See Robert S. Weiss Associates Inc. v. Wiederlight,
supra, 208 Conn. (upholding a two year time limitation); Scottv. General Iron Welding Co., supra, 171 Conn. 138 (upholding a five year restriction); Torrington Creamery Inc. v. Davenport,126 Conn. 515, 12 A.2d 780 (1940) (upholding a two year prohibition).
Second, the restrictive covenant provides that if within one year of ceasing work for KXI, Saaski proposes to work; for, or renders services to, a competitor and Saaski fails to give the employer ten days advance notice of such proposal or work, the non-competition period shall not end until one year after the date on which KXI learns that Saaski has entered into an employment relationship with a competitor. Conceivably, Saaski could accept employment with a competitor within one year of leaving KXI, fail to notify KXI, then ten years later, KXI could learn of the employee's action and seek to enjoin Saaski from working for that competitor. While this second time restriction is potentially long, it is somewhat limited in that it only applies where Saaski begins work for a competitor of KXI within one year of leaving KXI. Furthermore, a lengthy time restriction CT Page 9616 may be reasonable under the circumstances when it is coupled with a arrow geographical restriction. Van Dyck Printing Co. v.DiNicola, supra, 43 Conn. Sup. 197. Here, although Saaski is subject to a potentially long time restriction, the time restriction is sharply curtailed in that it only applies if Saaski joins one of the four competitors of KXI within one year of leaving KXI. The time restriction of the restrictive covenant, when read in conjunction the arrow geographic restriction, is reasonable under the circumstances.
2. Protection to the Employer
"In order to be valid and binding, a covenant which restricts the activities of an employee following termination of his employment . . . should afford only a fair protection to the interest of the party in whose favor it is made. . ." Scott v.General Iron Welding Co, supra, 171 Conn. 137. "[W]hen the character of the business and the nature of employment are such that the employer requires protection for his established business against competitive activities by one who has become familiar with it through employment therein, restrictions are valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights. Especially if the employment involves . . . [the employee's] contacts and associations with clients or customers it is appropriate to restrain the use, when service is ended, the knowledge and acquaintance, so acquired, to injure or appropriate the business which the party was employed to maintain and enlarge" Robert S.Weiss Associates Inc. v. Wiederlight, supra, 208 Conn. 533. "When, as here, a high degree of similarity between an employee's former and current employment makes it likely that the former employer's trade secrets and other confidential information will be disclosed either intentionally or inadvertently, by the employee in the course of his new employment, enforcement of a covenant not to compete is necessary to protect against such use and disclosure." (Citation omitted.) Aetna Retirement Services v.Hug, supra, Superior Court, Docket No. 47 99 74.
In the present case, Saaski became familiar with KXI's particular expedited method of manufacturing standard and special order solid carbon block water filters. KXI understandably seeks to protect this information from its competitors. The restrictive covenant in this case provides a fair and reasonable degree of protection to KXI. CT Page 9617
3. The Employee's Opportunity to Pursue His Occupation
"The interests of the employee himself must also be protected, and a restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and prevented from supporting himself and his family" Scott v.General Iron Welding Co., supra, 171 Conn. 137.
The restrictive covenant herein does not preclude Saaski from earning a living because Saaski is only prohibited from working for the four companies that manufacture solid carbon block water filters. Saaski is free to work for other companies in the water purification industry. Furthermore, after the expiration of the non-competition period, the defendant is free to join any one of the plaintiff's four competitors that extends him an offer of employment. See Daniel v. Keane Agency Inc. v. Butterworth,
supra, Superior Court, Docket No. 31 31 81.
4. The Public Interest
"In order for such interference [with the public interest] to be reasonable, it must be determined that the employer is seeking to protect a legally recognized interest, and then, that the means used to achieve this end do not unreasonably deprive the public of essential goods and services." New Haven Tobacco Co. v.Perrelli, supra, 18 Conn. App. 536. "In determining whether a restrictive covenant unreasonably deprives the public of essential goods and services, the reasonableness of the scope and severity of the covenant's effect on the public and the probability of the restriction's creating a monopoly in the area of trade must be examined." Id.
KXI has a legally protected interest in protecting itself from the competition of a former employee who became familiar with KXI's product manufacturing process while employed by the plaintiff. See Daniel v. Keane Agency Inc., supra, Superior Court, Docket No. 31 31 81. This restriction in this case does not create a monopoly or interfere with the public's ability to procure carbon block water filters. Id.
IV. CONCLUSION
The employment agreement (covenant not to compete) is supported by sufficient consideration. The restrictive covenant contained therein is reasonable under the circumstances and is CT Page 9618 therefore valid and enforceable. Accordingly, the court issues a temporary injunction enjoining Saaski from working for Water Safety, or any other of KXI's three competitors, until March 10, 1998.[13]
Dated at New Haven this 29th day of August 1997.
Frank S. Meadow Judge Trial Referee