## THERMOGLAZE, INC. *v.* MORNINGSIDE GARDENS COMPANY
## (8846)

DUPONT, C. J., SPALLONE and LAVERY, Js.

Argued November 7, 1990—decision released January 15, 1991

*Gina A. Pasquini,* with whom, on the brief, was *Gaetano Ferro,* for the appellant (defendant).

*Eric L. Reinken,* for the appellee (plaintiff).

SPALLONE, J. The defendant appeals from the judgment of the trial court accepting the report of the attorney trial referee. On appeal, the defendant claims that the attorney trial referee improperly found facts contrary to the evidence presented and improperly concluded that an alleged amendment to the parties' contract was unsupported by consideration. We disagree with the defendant and affirm the judgment of the trial court.

Evidence presented to the attorney trial referee supports the following facts. The plaintiff, Thermoglaze, Inc., a corporation in the business of furnishing and installing windows, and the defendant, Morningside Gardens Company, the owner of an apartment complex, entered into a written contract that provided, inter alia, that the plaintiff, in consideration of the payment of $88,960, would furnish and install 444 windows in the apartment complex. The contract contained a provision leaving the selection of color (either bronze or white) open, and provided that the defendant would exercise its choice so that the plaintiff could order the appropriate windows from its manufacturers. Lewis McClaine, the plaintiff's president, signed the contract on July 9, 1986. Frank Alebrande, the defendant's representative, signed the contract on August 19, 1986, without making a decision as to the color of the windows. Alebrande stated that he would make a decision as to the window color at the time he paid the first installment due under the contract. When the first installment was paid, three or four weeks later, Alebrande specified white windows, which the plaintiff ordered, delivered to the job site, and, at the behest of and with the permission of Alebrande, stored in the office of the apartment complex maintenance supervisor. The plaintiff's crew took three to four hours to unload and to store the windows. The defendant's maintenance man, his assistant, and the manager of the com-

plex were present during this process. The plaintiff stored the windows on the site from December 15, 1986, to January 5, 1987, when installation commenced. During that time, although various matters were discussed by the parties, the defendant never lodged a complaint with regard to the color of the windows.

The plaintiff began installing the windows on January 5, 1987, without any objection from the defendant. Over a two week period, 195 windows were installed, after which the defendant's representative advised the plaintiff that the owner's wife was unhappy with the white color and that the defendant wanted to change to bronze. The defendant contended that it had ordered bronze windows in the first instance, and that the plaintiff mistakenly had ordered and proceeded to install white windows. The defendant claimed that upon observing the installation of white windows the defendant's representative promptly told the plaintiff to cease installation.

The work stopped upon the installation of 195 windows and the parties thereafter negotiated in an attempt to resolve the resultant impasse. On January 16, 1987, McClaine signed and delivered a letter stating that the plaintiff would replace the white windows with bronze windows. On January 17, 1987, the plaintiff's president and the defendant's representative signed a memorandum stating that the plaintiff would install bronze windows and bronze exterior trim at no additional cost to the defendant and further stated: "This is an amendment to the contract signed on 8/19/86."

McClaine testified that he had agreed to the change to bronze windows in exchange for the defendant's promise to make up the substantial financial loss to the plaintiff on the contract in question by awarding lucra-

tive contracts on other properties controlled by the defendant. The defendant denied making any such promises and avers that the plaintiff was merely correcting its error in ordering and installing the wrong color windows.

Bronze windows were never ordered by the plaintiff, nor did it install any additional windows at the defendant's complex. The plaintiff attributes this to the defendant's refusal, despite repeated requests, to commit itself specifically and firmly to future work contracts, without which the plaintiff was unwilling to undertake the substantial expense of ordering, substituting and installing new bronze windows.

The attorney trial referee, after considering all the evidence, stated, "the trial referee has accepted in substance the testimony of plaintiffs' witness, Mr. McClaine. The referee has paid particular attention to the witnesses themselves as they testified, observed their demeanor on the stand, their expressions, their mannerisms, and the other indices by which candor, sincerity and truthfulness are commonly found or found wanting. The testimony of Mr. McClaine is both plausible and credible. Accordingly, the referee finds the defendant has breached the August 19, 1986 contract by refusing to allow the plaintiff to complete the installation and by refusing to pay the amount due under the contract."

In a careful analysis of the circumstances leading to the January 16 and 17 writings, the referee found the three dispositive issues in this case in favor of the plaintiff. She found, first, that the parties in the original contract agreed that the windows would be white, second, that the agreement by the plaintiff to change, purchase and install bronze windows was a substantial promise by the plaintiff greatly increasing its cost, and, third, the new promise of the plaintiff was unsupported

by consideration. Upon review, the trial court accepted the attorney trial referee's report and upheld her decision. The defendant then brought this appeal.

The defendant is attacking the factual findings of the referee. Those factual findings are not clearly erroneous. See Practice Book § 4061; *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 153, 527 A.2d 679 (1987); *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985).

Having found those underlying facts, the referee correctly concluded that the amendment to the contract was unenforceable. "The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." *State National Bank* v. *Dick,* 164 Conn. 523, 529, 325 A.2d 235 (1973). A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do. Id; *Dahl* v. *Edwin Moss & Son, Inc.,* 136 Conn. 147, 155, 69 A.2d 562 (1949); *Simone* v. *Kirschner,* 100 Conn. 427, 429, 124 A. 20 (1924). "It is an accepted principle of law in this state that when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser remuneration, the second agreement does not constitute a valid, binding contract. See, e.g., *Dahl* v. *Edwin Moss & Son, Inc.,* [supra]; *Gruber* v. *Klein,* 102 Conn. 34, 127 A. 907 [1925]; *Warren* v. *Skinner,* 20 Conn. 559 [1850]. 'The basis of the rule is generally made to rest upon the proposition that in such a situation he who promises the additional [work] receives nothing more than that to which he is already entitled and he to whom the promise is made gives nothing that he was not already under legal obli-

gation to give. 1 Williston on Contracts, § 130.' *Blakeslee* v. *Board of Water Commissioners,* 106 Conn. 642, 652, 139 A. 106 [1927]." *Brian Construction & Development Co.* v. *Brighenti,* 176 Conn. 162, 166, 405 A.2d 72 (1978). *Simone* v. *Kirschner,* supra.

The trial court was correct in accepting the attorney trial referee's recommendation because there was ample evidence to support the attorney trial referee's factual findings, and the conclusions reached were in accordance with the applicable law.

The judgment is affirmed.

In this opinion the other judges concurred.