[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Creative Cabinetry, a Connecticut corporation with an office in Stamford, commenced this action against the defendant, Elaine Mandell, for money damages, claiming that the defendant had breached a written contract concerning the manufacture and installation of cabinets, counter tops and accessories in the defendant's office. The defendant agreed that she had signed a contract with the plaintiff dated on or about June 14, 1989, but claimed that the items furnished to her by plaintiff were defective and unworkmanlike. The defendant also filed a counterclaim alleging that the equipment or items in question were not installed in a timely or workmanlike fashion, and that her interior design business was damaged as a result.
The case was referred to Attorney Kenneth B. Povodator, an attorney trial referee, in accordance with General Statutes 52-434(a)(4) and Practice Book 428 et seq. The attorney trial referee conducted a trial and then filed his report recommending that judgment enter for the plaintiff against the defendants in the approximate amount of $8,000, plus prejudgment interest from June 1, 1990. The referee's report contains a number of findings of fact. He found that (1) the plaintiff did not commit itself to a specific date for the completion of installation of the various items, because starting the project was conditioned on receiving laminate from another source; (2) the plaintiff had installed essentially all of the items that were to be installed when its services were terminated by defendant on or about September 7, 1989; (3) the only items that remained to be installed and/or corrected were so-called "punch list" items that could have been corrected by plaintiff, who sought the opportunity to do so, but was not permitted on the premises by the defendant; (4) all of the items installed, with a minor exception of one file cabinet, were functional and usable by the defendant; (5) plaintiff's manufacture of the equipment was based on drawings provided by the defendant; (6) there was no real interference with defendant's business while the items were being installed, and to the extent there was any interference it had been anticipated by the parties and was inevitable; (7) the defendant failed to pay plaintiff the second payment required under the contract at the time the items were delivered to her premises; and (8) plaintiff installed a countertop CT Page 6200 in an unsatisfactory manner.
The attorney trial referee concluded that (1) the plaintiff performed its work in a generally reasonable and workmanlike manner; (2) plaintiff performed its installation phase of the project in a reasonably timely fashion; (3) to the extent that plaintiff did not complete all the work required, it was because defendant terminated plaintiff prematurely and before it had the opportunity to finish some punch list items; (4) defendant is entitled to a credit of $1,000 for the unworkmanlike installation of a countertop; and (5) defendant breached the contract when she failed to make the required second payment to plaintiff. In addition, the referee concluded that the defendant had failed to prove her counterclaim because there was no unreasonable interference with her business, nor was her business damaged in any way by the plaintiff's installation of the items in question.
Pursuant to Practice Book 438, the defendant Mandell moved to correct the report. She contended that the findings of fact should be amended so as to strike nine findings of fact, and all twelve conclusions of the referee, and to add seventeen new facts and eight new conclusions. The motion to correct contended that (1) the parties agreed orally that plaintiff's installation of the equipment was to commence on or about July 5, 1989, and was to be completed within a week or ten days thereafter; (2) the equipment installed by plaintiff was not functional or usable by the defendant; (3) the plaintiff failed to manufacture and install the equipment in question in a workmanlike manner, or in accordance with the drawings provided by defendant; (4) defendant failed to complete its work in a timely fashion, viz., within ten days of July 4, 1989, but rather was still working on the project on or about September 7, 1989, when its services were terminated; (5) plaintiff's failure to complete the project in a timely fashion substantially interfered with defendant's interior design business and caused her financial loss; (6) the defendant was excused from paying any further money to plaintiff because of the latter's breach of contract; and (7) defendant was entitled to damages of approximately $11,700, a figure based on estimates of the cost of repairing the faulty installation of the equipment at issue by the plaintiff.
In response to the defendant's motion to correct, the referee issued a very detailed, thoughtful and comprehensive supplemental report dated March 4, 1993, which reiterated the factual basis for his original findings and recommendations, and he declined to make any substantive changes to his report.
The usual review of an attorney trial referee's report by this court consists of two tasks, according to Thermoglaze, Inc. v. Morningside Gardens, Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied, CT Page 6201217 Conn. 811, 587 A.2d 153 (1991). The first is to determine whether "there was ample evidence to support the attorney trial referee's factual findings," and the second is to rule on whether "the conclusions reached were in accordance with applicable law." In this case, however, although the defendant did file objections to the acceptance of the report, Practice Book 440, she did not file a transcript of the trial and exceptions asking this court to correct the report. Practice Book 439. It follows therefore that the factual findings by the referee must stand uncorrected. Ruhl v. Fairfield, 5 Conn. App. 104, 106, 496 A.2d 994
(1985) (our task is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions"). Failing to file exceptions constitutes in effect a "waiver" of the right to "attack the subordinate factual findings contained in the report." Bernard v. Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171 (1989).
This court's authority in reviewing an attorney trial referee's recommendations is a limited one, in any event. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Also, Wilcox Trucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 425, 567 A.2d 1250 (1989), notes that "[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous."
Since we must accept the referee's findings of fact in the absence of any exceptions to the report, this court's task, according to Bernard v. Gershman, supra, 656, is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. The Appellate Court added in Bernard that "[w]here evidence is in conflict, its probative force is for the trier of fact to determine." Id. In reviewing the motion to correct, one senses that the defendant is attempting to substitute her own version of the facts for those found by the referee, a practice which was discountenanced in Argentis v. Gould, 23 Conn. App. 9, 19,579 A.2d 1078 (1990).
The referee found that the plaintiff complied substantially with its obligations under the contract and accordingly was entitled to the contract price, less a credit to the defendant for the faulty installation of one countertop. He also determined that the defendant had not proved CT Page 6202 her counterclaim which contended that her business had been damaged by plaintiff's alleged untimely and unworkmanlike installation of the equipment. These conclusions by the referee are supported by the underlying findings of fact.
The defendant Mandell also filed objections to the acceptance of the referee's report. Practice Book 440. She contends that (1) the manufacture and installation of the items or equipment were done in an unworkmanlike manner and not in accord with certain woodworking standards set forth in the Architectural Woodworking Institute's "Architectural Woodworking Quality Standards." Defendant argues that as I a result of plaintiff's breach of the contract, she was excused from her obligation to pay plaintiff in accord with that contract. These objections mirror defendant's motion to correct, and in essence claim that the referee should have credited testimony of the defendant's witnesses rather than those presented by the plaintiff. As the Appellate Court noted in Citytrust v. Page, 28 Conn. App. 907, 908, 610 A.2d 197 (1992), "[a]lthough much of the trial testimony was disputed, the credibility of witnesses, the findings of facts and the drawing of inferences are all within the province of the trier of fact. . . . It is futile to assign error involving the weight of testimony or the credibility of witnesses. . . . This court can neither retry the facts in order to make our own findings nor pass on the credibility of witnesses . . . but can only review such findings to determine whether they could legally, logically and reasonably be found thereby establishing that the trial court could reasonably conclude as it did." (internal quotation marks and citations omitted.)
In conclusion, I agree with the referee that judgment should enter in favor of the plaintiff because no material error in his report has been found, or any other sufficient reason why the report is unacceptable. Practice Book 443. I believe that, in the words of Practice Book 440, his recommendations were "properly reached on the basis of the subordinate facts found."
Judgment is entered in accordance with the referee's report in favor of the plaintiff to recover $8,980.97, the unpaid portion of the contract price, which includes a sales tax of 7-1/2%, less a credit to the defendant of $1000 for the countertop, or $7,980.97. With respect to interest, the referee recommended that plaintiff be awarded prejudgment interest of 10% per year from June 1, 1990, the date payment should have been made. Prejudgment interest is authorized by General Statutes 37-3a
for the "detention of money after it becomes payable." Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 702, 590 A.2d 957 (1991). Interest for three years and twenty-four days amounts to $2,446.75, for a total judgment due plaintiff of $10,427.72. Costs are to be taxed by the clerk. CT Page 6203
So Ordered.
Dated at Stamford, Connecticut, this 24th day of June, 1993.
William B. Lewis, Judge