[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Hilda and Theodore Craig, allege that the defendant, Charles R. Pia, doing business under the trade name of Charles and Charles Home Remodelers, of Stamford, breached a written agreement to perform certain improvements on their rental premises located at 26 Orchard Street in Norwalk. The amended complaint, dated March 11, 1993, contains four counts. In the first count, the CT Page 10601 plaintiffs allege a breach of contract on the basis that they sustained fire damage at their home on January 25, 1990; that their insurance carrier, The Aetna Casualty Surety Co. (Aetna), subsequently issued a check for $14,251.77, representing 80% of the estimated damages, which was endorsed over to the defendant; that the defendant only performed approximately 25% of the work before walking off the job; and that defendant refused to complete the work or return to the plaintiffs any of the money received from Aetna. In the second count, the plaintiffs claim that the defendant has been unjustly enriched. The third count claims a violation of General Statutes § 42a-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). The fourth count contends that defendant violated the Home Improvement Act, General Statutes § 20-427(b), by refusing to refund any of the money received from Aetna. The plaintiffs' complaint seeks compensatory damages and interest, attorney's fees and punitive damages. The defendant appeared pro se and filed an answer denying the material allegations of the complaint.
The case was referred to Attorney Edwin K. Dimes, an attorney trial referee, in accordance with General Statutes § 52-434(a)(4) and Practice Book § 428 et seq. The attorney trial referee conducted a trial and then filed his report recommending that judgment enter for the plaintiffs in the amount of $21,901.77, on the first count alone, plus prejudgment interest. The referee made the following findings of fact: (1) that defendant performed some work after receiving Aetna's check but never completed the project; (2) that in May, 1990, defendant presented plaintiffs with an estimate of $5,509.14, for certain additional electrical code work, which plaintiffs refused to pay on the theory that such work was included in the original estimate by Aetna; (3) that defendant then walked off the job and refused to return and complete the work required by the contract; (4) that the plaintiffs had this electrical work performed by another contractor for $550; (5) that the value of the work performed by defendant was $2,750: and (6) that the premises consisted of rental units, of which the plaintiffs had consistently leased five bedrooms at $80 a week, and had not received any rental income from January, 1990, to May, 1993, during which period the required work was completed by another contractor and a certificate of occupancy was obtained.
The attorney trial referee drew the following conclusions from these findings of fact: (1) that the plaintiffs were entitled to be reimbursed for the money received by the defendant from Aetna, $14,251.77, less $2,750, the value of the services rendered by the defendant, or $11,501.77; (2) that the plaintiffs were also CT Page 10602 entitled to receive loss of rent of $10,400, calculated at $400 a week for 26 weeks.
Pursuant to Practice Book § 438, the defendant moved to correct the report. The defendant contended that the findings of fact should be amended so as to reflect that: (1) he was willing to complete the work at plaintiffs' premises, but only if he first received payment for the electrical code work needed to be performed; (2) it was impossible for plaintiffs' witness to accurately estimate the amount of work performed by defendant as the witness had not viewed the premises before the work commenced; (3) he did not refuse to complete the project, but first wanted payment for the electrical work; and (4) he was not responsible for plaintiffs' lost rent. In response to the defendant's motion to correct, the referee issued a supplemental report in which he declined to make any corrections to his report.
The usual scope of review of an attorney trial referee's report by this court consists of, first, determining whether "there was ample evidence to support the attorney trial referee's factual findings," and, second, whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. MorningsideGardens, Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied,217 Conn. 811, 587 A.2d 153 (1991). In the present case, the defendant did not file exceptions asking this court to correct the report. Practice Book § 439. It follows therefore that the factual findings by the referee must stand uncorrected. Ruhl v. Town of Fairfield, 5 Conn. App. 104, 106,496 A.2d 994 (1985) (the court's role is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions.") A failure to file exceptions constitutes in effect a waiver of the right to "attack the subordinate factual findings contained in the report." See Bernard v. Gershman, 18 Conn. App. 652,655, 559 A.2d 1171 (1989), where a failure to file a motion to correct waived the right to challenge referee's report.
The defendant did file objections to the acceptance of the referee's report, Practice Book § 440, in which he contended that there was "no factual basis" for the referee's recommendation regarding lost rental income or the "amount of money spent on remodeling." This court's authority in reviewing an attorney trial referee's recommendations is a limited one. As our Supreme Court has held: (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] CT Page 10603 has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Town of Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716; see also Wilcox Trucking, Inc. v. Mansour Builders, Inc.,20 Conn. App. 420, 425, 567 A.2d 1250 (1989) ("[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous.")
Since the trial court must accept the referee's findings of fact in the absence of any exceptions to the report, its task is to determine whether the legal conclusions "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, supra, 18 Conn. App. 656; Practice Book § 440. "[W]here evidence is in conflict" its probative force is for the trier of fact to determine." Id.
In the present case, the referee found that the parties knowingly entered into a contract, in which defendant accepted a check from Aetna for $14,251.77, but had walked off the job without justification and before completing the work, and that defendant refused to return any of the money received from Aetna. The referee also concluded that the defendant's refusal to perform the agreed upon work made him liable for the rent lost by plaintiffs until such time as the damages were repaired and a certificate of occupancy was received.
Because of the referee's finding of fact regarding the amount of work actually performed by defendant, the court agrees with the referee's recommendation that judgment should enter in favor of the plaintiffs. No material error in the referee's report has been found, nor any other sufficient reason why the report is unacceptable. Practice Book § 443. The court finds that, in the words of Practice Book § 440, the referee's recommendations were "properly reached on the basis of the subordinate facts found."
Judgment is entered in accordance with the referee's report in favor of the plaintiff to recover $21,901.77, and in favor of the defendant with respect to the three remaining counts of the complaint. Prejudgment interest from March, 1991 for the wrongful detention of money amounts to $6,753.02, and thus the total amount due plaintiffs from defendant is determined to be $28,654.79. Costs are to be taxed by the clerk. CT Page 10604
So Ordered.
Dated at Stamford, Connecticut, this 18th day of October, 1994.
William B. Lewis, Judge