[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above captioned actions, both of which involve premises located at 5 Idlewild Manor in Greenwich, were consolidated for trial. The plaintiff in the first of the two actions, Jenny T. Schmaling, is the mother of Scott M. Schmaling, the defendant. In the second of the above two actions, Scott Schmaling brings an action against his mother, Jenny T. Schmaling. For purposes of this decision, Jenny Schmaling will be referred to as the plaintiff, and Scott Schmaling as the defendant. The first action, in which Jenny T. Schmaling is the plaintiff, contains four counts. In the first count of her complaint, the plaintiff alleges that on or about March 10, 1982, she agreed with her son Scott that she would change the title to the subject premises from sole ownership in the plaintiff's name to a joint tenancy with the defendant; that the defendant agreed to build an second floor apartment addition to her house, thus converting it into two-family occupancy, and housing the defendant and his family in CT Page 1771-QQ said addition; that both parties agreed to and did obtain a mortgage to finance the addition, which the defendant agreed to pay; that the defendant constructed the addition and occupied it; that approximately ten years later, in 1992, the defendant vacated the subject premises and moved elsewhere with his family; that it would cost the plaintiff about $25,000 to complete the construction project on the second floor, and thus the defendant breached his agreement with the plaintiff. In the second, third and fourth counts, the plaintiff alleges fraudulent misrepresentations, detrimental reliance, and unjust enrichment, respectively. The plaintiff seeks a recision of the agreement with the defendant, a reconveyance of his interest in the premises and damages.
The defendant filed an answer agreeing that the plaintiff had conveyed an undivided one half interest in the subject premises to him, that he was to construct an apartment addition to the premises, but denying all other material allegations of the complaint.[1] The defendant also filed a two count counterclaim. In the first count, he alleged that the plaintiff agreed to be responsible for one-half of the real estate taxes, CT Page 1771-RR insurance and utilities for the subject premises, and that the plaintiff had refused to make such payments. In the second count, the defendant contends that he installed vinyl siding and insulation for the entire house, and that the plaintiff had agreed to pay one half of the cost thereof, but had only paid one half of that amount, or one quarter of the cost, and that the plaintiff had become unjustly enriched as a result. The defendant seeks a partition of the premises and damages.
In the second of the two above captioned cases, which was commenced several months after the first case, the defendant, the plaintiff in this action, alleges that he and the plaintiff, the defendant in this action, owned the subject premises as joint tenants with right of survivorship, and that People's Bank holds a mortgage executed by the defendant and the plaintiff dated February 24, 1983, in the principal amount of $43,000. The defendant, the plaintiff in this action, seeks a partition by sale. The plaintiff, the defendant in this action, in her answer, agrees with those allegations, but she filed a special defense that the defendant had obtained title to the subject premises by fraud and breach of contract, and that his interest should be CT Page 1771-SS reconveyed to the plaintiff.
The case was referred to Attorney Kenneth B. Povodator, an attorney trial referee, in accordance with General Statutes §52-434(a)(4) and Practice Book § 428 et seq. The attorney trial referee conducted a trial and then filed an identical report in each case containing the following findings of fact: (1) that at the time the plaintiff, agreed to and did convey an undivided one half interest in the premises to the defendant, so that the property thereafter was held jointly with right of survivorship, she also agreed to be responsible for paying one half of the real estates taxes, insurance, utilities and maintenance; (2) that starting in 1985, the plaintiff breached this agreement by not making such payments, that the defendant was obligated to and did made such payments, and accordingly has been damaged in the amount of $14,239 for his overpayment of taxes, insurance and utilities; (3) that the defendant caused $1,500 of damages to the first floor premises where his mother lived while constructing the second floor addition; and (4) that the parties did not have an agreement regarding the length of time that Scott Schmaling would continue to reside on the second CT Page 1771-TT floor of the subject premises.
The attorney trial referee reached the following conclusions as a result of his findings of fact: (1) that the plaintiff failed to prove that the defendant had committed fraud or had made any misrepresentations with respect to either how long he was committed to live on the second floor of the subject premises, or what would happen to his undivided one half interest in the event that he left the premises, as he did in 1992; (2) that the parties had not reached any kind of understanding or agreement on either of the above two subjects; (3) that the plaintiff had conveyed an undivided one half interest in the subject premises to the defendant in order that a mortgage could be obtained, from which funds the second floor apartment, in which the defendant and his family resided for approximately ten years, was constructed; (4) that the plaintiff had failed to prove that the defendant had agreed to complete construction of the renovations to the first floor of the subject premises where the plaintiff resided; (5) that it would be "inequitable" to order a partition of the premises, although agreeing that the "parties had stipulated that Defendant had proved his right to a CT Page 1771-UU partition, subject to the Court's determination of the merits of the special defense" filed by plaintiff, which contended that the defendant was being unjustly enriched; (5) that a constructive trust should be imposed on the defendant's interest in the subject premises, although agreeing that neither party to the two actions had sought such a remedy; (6) that the defendant's interest in the premises should be reconveyed to the plaintiff, subject to: (i) the defendant being released from any liability or obligation on the mortgage to People's; and (ii) payment by the plaintiff to the defendant of $14,259, for his overpayment of taxes, insurance and utilities, less $1,500 for damages sustained by the plaintiff to the first floor of the subject premises; (7) that as to the first of the above actions, judgment should enter in favor of the plaintiff for $1,500 damages to the first floor; (8) that judgment should enter for the defendant with respect to the second and third counts of the complaint alleging fraud and detrimental reliance; (9) that as to the fourth count of the complaint claiming unjust enrichment, a constructive trust should be imposed on the defendant's interest in the subject premises, subject to his release from liability for the People's mortgage, and the payment to him of $14,259, less $1,500 as a credit to the CT Page 1771-VV plaintiff for damages to her first floor premises, for a total due defendant of $12,759; and (10) that in the second action brought by the defendant against the plaintiff, the referee recommended that judgment enter in favor of the plaintiff, denying the request of the defendant that a partition of the subject premises by sale be ordered, on the theory of unjust enrichment, referred to by the referee in connection with the first action. The result of the referee's recommendation would be that the plaintiff would have sole title to the premises, including the benefit of the new second floor apartment, which had been constructed with the defendant's own efforts, and with the proceeds of a mortgage which he had been paying and is still paying.
The plaintiff did not file any motions with respect to the referee's report, but the defendant moved, pursuant to Practice Book § 438, to correct the report. This defendant contends that the findings of fact should be amended so as to reflect that: (1) it was the plaintiff who had originally suggested to the defendant that he build an apartment on the second floor of her house because of a question regarding his ability to find CT Page 1771-WW adequate housing for his family; (2) that in order to amortize the current mortgage on the premises, the defendant was paying $691 a month; (3) that the defendant had borrowed a total of $68,000 in order to pay for material for the addition, and that the fair rental value of the subject premises was $1,550 per month; (4) that the plaintiff had breached her agreement to pay her share of the taxes, utilities and insurance; (5) that even the plaintiff had agreed in her complaint that title was transferred to a joint tenancy so that the defendant could build an additional apartment for him and his family; and (6) that plaintiff had received "consideration" for her transfer of title in that another dwelling unit was constructed on the premises which enhanced its value and provided current rental income of approximately $1,500 a month.
In response to the defendant's motion to correct, the referee issued a supplemental report dated October 30, 1994, in which he agreed that certain changes in his findings of fact were warranted as follows: (1) that the defendant "did nothing to induce or encourage" the plaintiff to transfer an undivided one half interest in the premises to himself; (2) that the fair CT Page 1771-XX rental value of the second floor addition as of July, 1992, was "at least" $1,550 per month; (3) that the parties had obtained a mortgage loan in June of 1982 for $32,000, which was refinanced in February of 1983 for $43,000; (4) that defendant had made all the payments for the two mortgages; (5) that the additional dwelling unit constructed by the defendant "substantially increased the value of the premises;" (6) that the defendant was entitled, among other things, to be "reimbursed for the excess of the value he put into the property over the reasonable value of his use of the property;" and (7) that the plaintiff had breached the contract with her son by failing to pay her one half share of the taxes insurance and utilities.
The referee declined, however, to change his recommendation that title be reconveyed to the plaintiff and that the defendant's request for a partition by sale be denied. This recommendation was based, according to the referee, on his conclusion that the only reason that a joint tenancy with the defendant was created was to obtain financing for the construction of the addition, that the plaintiff did not have a "donative intent" and also that "there was no consideration for CT Page 1771-YY the transfer."
As to this court's standard of review of an attorney trial referee's findings of the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Town of Enfield, 210 Conn. 705,714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Thus, generally this court's task consists of, first, determining whether "there was . . . evidence to support the attorney trial referee's factual findings," and, second, whether "the conclusions reached were in accordance with the applicable law. Thermoglaze, Inc. v. Morningside Gardens, Co., 23 Conn. App. 741,746, 583 A.2d 1331, cert. denied, 217 Conn. 811,587 A.2d 153 (1991).
In the present case, the defendant did not file a transcript CT Page 1771-ZZ with his exceptions. Practice Book § 439.[2] It follows therefore that the factual findings by the referee must stand uncorrected because, without a transcript, these findings cannot possibly be evaluated. Hence, the referee's report must be viewed as if no exceptions had been filed. A failure to file valid exceptions constitutes in effect a waiver of the right to "attack the subordinate factual findings contained in the report." SeeBernard v. Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings.)
The defendant did file the following objections to the acceptance of the referee's report, Practice Book § 440: (1) that the referee had stated at one point that the plaintiff did not receive any "consideration" for her transfer of a one half interest in her property to the defendant, but subsequently agreed that the additional dwelling unit constructed by the defendant with money he borrowed and is paying back "substantially enhanced" the value of the subject premises; (2) that the referee had stated that a partition was inequitable, while finding as facts that the plaintiff had breached her CT Page 1771-AAA agreement with the defendant, and that he had not engaged in any fraudulent conduct or made any misrepresentations, but rather had in fact lived up to his obligations under the contract; and (3) that the referee had recommended the imposition of a constructive trust, which neither party had sought in their respective claims for relief.
Since the trial court must accept the referee's findings of fact in the absence of valid exceptions to the report, its task is limited to determining whether the legal conclusions "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, supra,18 Conn. App. 656; Practice Book § 440. In the present case, the referee concluded that a partition of the premises by a sale would be inequitable because the plaintiff did not have a donative intent when she conveyed a one half interest in the premises to her son, and that the conveyance was motivated solely in order to obtain a mortgage.
It is evident that the referee in this case did not credit the stipulation entered into between the parties to this CT Page 1771-BBB litigation, which his finding #30 specifically mentioned, to the effect that "[s]ubject to any special defenses that she may have proved, Plaintiff has conceded that Defendant has proved the necessary elements to establish a right to partition. (Stipulation of the parties.)" The plaintiff filed a special defense to the defendant's counterclaim in the first action, which alleged that "[t]he plaintiff has no liability to the defendant due to the misrepresentations and fraudulent conduct as alleged in the Complaint." The referee, however, made a specific finding that the defendant had not engaged in any fraud or misrepresentations. In the second action, in which the plaintiff, Jenny T. Schmaling, was the defendant, she filed a special defense that the defendant, plaintiff in this case, had committed fraud and had breached his contract with her. Again, the referee rejected both claims. The only other element of that special defense was a claim that a partition should not be ordered because it would offend "justice, equity and fairness."
Thus, although the referee's factual findings are accepted, it nevertheless appears that his conclusion that the defendant is not entitled to a partition by sale of the subject premises is CT Page 1771-CCC incorrect as a matter of law. "A referee's determinations of law in his or her report are not binding on the court . . . the trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . [t]he trial court [has] the inherent authority . . . to render whatever judgment was appropriate in light of the facts found by the attorney trial referee." (Citations omitted; internal quotation marks omitted.) Dills v.Enfield, supra, 210 Conn. 713.
The parties stipulated that the defendant had proved he was entitled to a partition, subject only to the validity of the plaintiff's special defenses, which the referee specifically rejected. "General Statutes § 52-495 vests authority in courts having jurisdiction of actions for equitable relief to order partition of any real property held in joint tenancy
(emphasis in original), tenancy in common. . . . The right to partition has long been regarded as an absolute right, and the difficulty involved in partitioning property and the inconvenience to other tenants are not grounds for denying the remedy. No person can be compelled to remain the owner with CT Page 1771-DDD another of real estate, not even if he become such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afforded to every owner with another relief by way of partition." (Citations omitted; internal quotation marks omitted.) Geib v. McKinney, 224 Conn. 219, 224,617 A.2d 1377 (1992).
Moreover, the referee found that the idea of constructing a residence on the second floor of her home was plaintiff's own idea, and that the defendant had not suggested it. In order to accomplish the goal sought by plaintiff, construction financing was required, and the plaintiff voluntarily put her property in joint tenancy with the defendant. If a partition is denied, the plaintiff would be left in sole ownership of a home whose value, the referee agrees, has been substantially enhanced, including a fair rental value of $1,500 or so per month for the apartment that the defendant built with his own efforts and with funds from a mortgage that he has been paying for many years. Simply crediting the defendant with approximately $14,000, which the CT Page 1771-EEE referee agreed was owing him, due to the plaintiff's breach of contract, and releasing him from further liability for the mortgage, seems, to quote the plaintiff, contrary to "justice, equity and fairness."
As to the alleged lack of donative intent on the part of the plaintiff, it is clear from the referee's report that she voluntarily placed her property in joint tenancy in order to accomplish a goal that she herself sought, viz., that the defendant and his family live in the same house with her. The law presumes a donative intent where a grantee is the natural object of the grantor's bounty. Farrah v. Farrah, 187 Conn. 495, 500,446 A.2d 1075 (1982); Saradjian v. Saradjian, 25 Conn. App. 411,414, 595 A.2d 890 (191).
Accordingly, judgment is entered in the first three counts of the first of the above captioned actions in accordance with the referee's report as follows: that plaintiff should recover damages of $1,500, that judgment should enter for the defendant on the second and third counts. Judgment shall enter for the defendant as to the fourth count claiming unjust enrichment, and in favor of the defendant on the first count of his counterclaim CT Page 1771-FFF in the amount of $14,259, and in favor of the plaintiff on the second count of his counterclaim. In the second of the above actions, judgment is entered in favor of the defendant and a partition by sale is ordered. "A partition by sale, although a creature of statute, is an equitable action. Section 52-500(a) permits a court, upon the complaint of any person interested, to order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners." Geib v. McKinney, supra, 224 Conn. 228. It would be impractical to divide this house in kind, and therefore a sale is ordered.
Accordingly, Attorney David W. Hopper of Greenwich is appointed a committee to sell the subject premises at auction on Saturday, April 22, 1995, at 12:00 noon, with advertising in the Greenwich Time the three preceding Fridays, with the funds of any such sale to be deposited with the clerk of this court, subject to disbursement, including the expenses of sale, pursuant to a further hearing to determine an equitable distribution of the proceeds of sale. Geib v. McKinney, supra, 224 Conn. 229-30.
No costs are to be taxed. CT Page 1771-GGG
So Ordered.
Dated at Stamford, Connecticut, this, 28th day of February, 1995.
William B. Lewis, Judge