[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These three cases were combined for trial because they all involve the construction of a home in Westport. In the first of the above captioned cases, the general contractor for the project is McHugh Construction, Inc. (McHugh), hereinafter referred to as the plaintiff. Hammermill Business Corporation, Inc. (Hammermill), hereinafter referred to as the defendant, owns premises located at Compo Mill Cove in Westport. The plaintiff filed a three count substituted complaint dated July 18, 1986. In the first count, the plaintiff alleges that pursuant to a written contract dated November 8, 1984, it provided materials and services to the defendant in order to construct a single family residential dwelling on defendant's property in the amount of $287,266; that the plaintiff performed its obligations under the contract and was paid $191,000; and that a balance remains due. In the second and third counts, the plaintiff alleges quantum meruit and unjust enrichment, respectively. The plaintiff seeks monetary damages in the amount of $95,586.
The defendant filed an answer denying the material allegations of the complaint, and two special defenses. The first such defense contends that the plaintiff seeks to recover for services rendered and material furnished that were not contained in the written contract between plaintiff and defendant, in violation of General Statutes § 20-429, which sets forth the requirements of a home improvement contract. In its second special defense, the defendant alleges that the plaintiff is attempting to recover for services and material that represent CT Page 2486 changes to the original contract, which were not in writing and therefore are not authorized by the contract. The defendant also filed a counterclaim containing five counts. In the first count of the counterclaim, the defendant alleges that the plaintiff breached the contract by failing to perform its work in either a timely or workmanlike manner. In the second count, the defendant claims that the plaintiff acted recklessly, carelessly and negligently in constructing the house on defendant's property, including failing to comply with the state building code. In the third count, the defendant alleges that the plaintiff had forged signatures of various subcontractors on lien waivers. In the fourth count, the defendant further claims that the plaintiff's actions violated General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act (CUTPA). In the fifth count, the defendant claims that the plaintiff violated General Statutes § 52-565, prohibiting forgery. The plaintiff filed a special defense to the counterclaim contending that the defendant was prevented from maintaining such an action because of General Statutes § 33-412, which prohibits a foreign corporation from pursuing an action in this state unless it first obtains a certificate of authority.
In the second of the above captioned cases, the defendant Hammermill is the plaintiff, and Brian M. McHugh individually is the only defendant, and not the corporation, McHugh Construction, Inc., of which he is the president. Hammermill alleges in the first count of an amended complaint dated September 21, 1987, that McHugh failed to construct the house on the premises in question in a good and workmanlike manner, but rather was negligent and thereby breached its contract with Hammermill. In the second count, Hammermill alleges that McHugh engaged in fraudulent and reckless misrepresentations by forging the names of subcontractors to waivers of mechanics liens. In the third count, this plaintiff claims that McHugh's conduct violated General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act (CUTPA). In the fourth count, Hammermill contends that McHugh violated General Statutes § 52-565, prohibiting forgery and permitting double damages. Hammermill seeks punitive damages, attorneys fees and double damages pursuant to the above statutes. Brian M. McHugh, the defendant in this action, filed an answer generally denying the allegations of the complaint, and special defenses including that the action was barred by "the statute of limitations."
In the third of the above cases, the plaintiff, Vincent CT Page 2487 Gaita, an electrician, sues both Hammermill and McHugh, and alleges that he rendered services and furnished material to the Hammermill premises as a subcontractor for McHugh. Gaita further claims that he is owed $9,000 and that he filed a mechanics lien on the subject premises and seeks to foreclose this lien. Hammermill filed four special defenses to Gaita's action. The first such defense is that the mechanics lien is defective because it was filed more than ninety days after the work had been performed and materials had been delivered. In the second special defense, Hammermill states that it had paid the original contractor, McHugh, before receiving notice of plaintiff's lien. Hammermill contends in its third special defense that Gaita had executed a lien waiver. In its fourth special defense, Hammermill claims that Gaita failed to foreclose its lien within the statutory one year deadline. McHugh denied the material allegations of Gaita's complaint and filed a counterclaim in which it alleged that the electrical work performed by Gaita was defective and unworkmanlike.
Hammermill filed a cross claim against McHugh in the third on contending that if it is ultimately found liable to the plaintiff, McHugh is responsible for reimbursing Hammermill for all such sums found to be due. McHugh filed a special defense to this cross claim, alleging that Hammermill could not maintain such an action because of General Statutes § 33-396, which prohibits foreign corporations from transacting business in this state unless they first obtain a certificate of authority from the secretary of the state. McHugh also filed a cross claim against Hammermill in this same action alleging that it was owed $95,586 pursuant to its contract with Hammermill, and that as a result it had been unable to pay certain of its subcontractors, including Gaita. Hammermill filed two special defenses to this cross claim which duplicate the special defenses filed against the plaintiff in the first action.
The case was referred to Attorney Matthew J. Forstadt, an attorney trial referee in accordance with General Statutes §52-434(a)(4) and Practice Book § 428 et seq. The attorney trial referee conducted a trial over the course of eight days, and then filed a report covering each of the three cases and containing the following findings of fact: (1) that Hammermill's premises were occupied by its principal officers, Paul Esteva and Nancy Esteva, as part of their compensation package, and that the premises were not purchased by the defendant for investment purposes; (2) that during the construction phase, the Estevas CT Page 2488 fired the original architect and delayed hiring a new architect; (3) that the plaintiff was not responsible for site preparation, and that the site was not made ready for the plaintiff to begin construction until late February, 1985; (4) that the slow progress of construction was contributed to not only by the delay in hiring a replacement architect, but also as a result of delay by the defendant in paying approved requisitions; (5) that some of the delay was also attributable to "communication error" between the defendant and its architect; (6) that Mrs. Esteva never registered any complaints with the plaintiff regarding the quality of the construction; (7) that all extras or changes were approved by Hammermill, either through the Estevas or their architect; (8) that when Mrs. Esteva terminated the plaintiff in December of 1985, the defendant's architect agreed that the project was 85% to 90% completed, and only some trim and "standard punch list items" remained to be performed; (9) that the plaintiff had performed its work in a "reasonable manner"; (10) that the plaintiff had been paid $191,000 on a final requisition of $229,200, plus $27,945 extras; and (11) that the plaintiff's president, Brian McHugh, signed Gaita's name to a mechanics lien waiver.
The attorney trial referee reached the following conclusions as a result of his findings of fact: (1) that the plaintiff had been wrongfully terminated by the defendant for reasons of convenience, and that when terminated, the plaintiff had substantially completed the project; (2) that any damage sustained to the subject premises after the plaintiff had been terminated and left the premises was not the fault of the plaintiff; (3) that the plaintiff should recover a total of $73,661, which is the contract price of $250,000, plus extras of $27,945, less $191,418 previously paid to the plaintiff, and less approximately $13,000 for remedial work required to be performed by the defendant to remedy certain aspects of the job that had not been performed in a workmanlike manner; (4) that judgment should enter for the plaintiff on defendant Hammermill's counterclaim because the defendant, not the plaintiff, breached the contract; (5) that Hammermill did not prove it suffered any ascertainable loss from the forgery of Gaita's name to the mechanics lien waiver, and should recover only nominal damages of $100 against McHugh, pursuant to CUTPA; and (6) that Gaita is owed $9,000 by the plaintiff, not by the defendant, and that Gaita's mechanics lien on the Hammermill property should be vacated. CT Page 2489
The plaintiff did not file any motions with respect to the attorney trial referee's report, but the defendant Hammermill moved, pursuant to Practice Book § 438, to correct the report. The defendant contends that the findings of fact should be amended to reflect that: (1) the contract provides that time is "of the essence" and that "substantial completion" means that the owner can occupy and use the premises; (2) the parties agreed that the project would be substantially complete by November 1, 1985, and that it was not substantially complete by the plaintiff as of that date; (3) the plaintiff breached the contract by not completing the project by that date and therefore it was not entitled to any damages; (4) the defendant Hammermill had sustained damages of approximately $30,000 because it had to pay other contractors to complete the work that the plaintiff had commenced but not finished; (5) certain aspects of the work performed by the plaintiff were defective and were not done in an acceptable and workmanlike fashion; and (6) the value of the extras performed by the plaintiff was $22,745, not $27,945.
In response to the defendant's motion to correct, the referee declined to make any changes in his findings of fact or recommendation that judgment enter for the plaintiff McHugh for $73,661, less $100 for the forgery, for the plaintiff with respect to the defendant's counterclaim, and for Gaita against McHugh for $9,000. The referee did, however, reiterate that the proposed date of completion of the project was known to the parties as impractical and unfeasible, and, in any event, the delay in completion was not the fault of the plaintiff.
With respect to this court's standard of review of an attorney trial referee's findings of fact in a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Town ofEnfield, 210 Conn. 705, 714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Thus, generally this court's task consists of, first, determining whether "there was . . . evidence to support the attorney trial referee's CT Page 2490 factual findings," and, second, whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v.Morningside Gardens, Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991).
In the present case, the defendant filed a combined "objection/exception" on September 13, 1994, but did not file a transcript with its exceptions. Practice Book § 439.[1] It follows therefore that the factual findings by the referee must stand uncorrected because, without a transcript, these findings cannot possibly be evaluated. Hence, the referee's report must be viewed as if no exceptions had been filed. A failure to file valid exceptions constitutes in effect a waiver of the right to "attack the subordinate factual findings contained in the report." See Bernard v. Gershman, 18 Conn. App. 652, 655,559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings).
The defendant did file the following objections to the, acceptance of the referee's report pursuant to Practice Book § 440: (1) that the referee ignored the provision of the contract that made time of the essence, that the agreed completion date was extended by agreement to November 1, 1985, and that the project was not substantially complete on that date; and (2) that after the plaintiff was terminated in December of 1985, the defendant hired other contractors to complete the project, and is owed approximately $31,000, as alleged in its counterclaim in the first action and in its complaint in the second action.
Since the trial court must accept the referee's findings of fact in the absence of valid exceptions to the report, its task is limited to determining whether the legal conclusions "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, supra,18 Conn. App. 656; Practice Book § 440. In the present case, according to the referee, there was testimony that the plaintiff had substantially completed its work when it was terminated without cause by the defendant. The referee concluded that the failure to finish the project on the due date was the fault of the defendant, that the defendant breached the contract, and that the plaintiff was entitled to recover damages. These conclusions follow logically from the referee's findings of fact. There is no doubt that evidence to the contrary was presented at CT Page 2491 trial, particularly from Mrs. Esteva, but "[w]here evidence is in conflict, its probative value is for the trier of fact to determine." Bernard v. Gershman, supra, 656. It appears from reviewing the defendant's motion to correct, and its objections/exceptions that the defendant is attempting to substitute its own version of the facts for those found by the referee, a practice discountenanced in Argentinis v. Gould,23 Conn. App. 9, 19, 579 A.2d 1078, rev'd on other grounds,219 Conn. 151, 592 A.2d 375 (1991).
The attorney trial referee's conclusions appear to be legally and logically correct, and thus the court agrees with his recommendation that judgment should enter in favor of the plaintiff. No material error in the referee's report has been found, nor any other sufficient reason why the report is unacceptable. Practice Book § 443. The court finds that, in the words of Practice Book § 440, the referee's recommendations were "properly reached on the basis of the subordinate facts found."
Accordingly, judgment is entered in favor of the plaintiff in the first of the above actions to recover from the defendant Hammermill the sum of $73,661, less $100 for the CUTPA violation; that in the second action, judgment enters in favor of the plaintiff; and that in the third action, judgment is entered in favor of Gaita against the plaintiff in the amount of $9,000, and the mechanics lien is to be released.
No costs are to be taxed.
So Ordered.
Dated at Stamford, Connecticut, this 8th day of March, 1995.
William B. Lewis, Judge