[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this three count complaint alleging breach of contract and unfair trade practices, the plaintiff, Richard Fossum, seeks to recover on a $120,000 promissory note executed by the defendant, Callari Auto Group, Inc. (Callari Auto), and guaranteed by the individual defendant, Felix F. Callari.[1] In the first count, the plaintiff alleges that on September 16, 1992, Callari Auto executed a note in the amount of $120,000, which provided for payment in twelve equal monthly installments of $10,000 principal; that Callari Auto made four such payments but has been in default since January 1993; that the note permitted acceleration in the event of default; and that the note was executed in connection with a commercial transaction within the meaning of General Statutes § 52-278a, viz., the sale of the CT Page 5237 plaintiff's Chrysler/Plymouth agency located in Stamford to the defendants. In the second count, the plaintiff alleges that the individual defendant Callari personally guaranteed repayment of the note. In the third count, the plaintiff alleges that the defendants violated General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act (CUTPA), because the note was part of the purchase price used to induce the plaintiff to sell his automobile agency to the defendants. The plaintiff claimed damages in the amount of $80,000, the unpaid principal balance, plus interest at 6%, late charges, and costs of collection, including reasonable attorney's fees, as provided for in the note.
The defendants filed an answer and a special defense asserting that the major consideration for signing the note was the execution by the plaintiff of a covenant not to compete against the defendants by engaging in the operation of a Chrysler/Plymouth agency within ten miles of Stamford for a period of two years. The defendants further allege that the plaintiff breached this covenant not to compete. The defendants also filed a two count counterclaim, in which they repeat the allegations of the special defense, and added a second count claiming that such conduct on the part of the plaintiff constituted a violation of CUTPA.
This case was referred to Attorney George W. Scott, Jr., an attorney trial referee, in accordance with General Statutes §52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the following findings of fact: (1) that the plaintiff was the principal officer and owner of Mill River Motors, Inc., a Chrysler/Plymouth agency located at 2 Smith Street, Stamford; (2) that Callari owned number of automobile dealerships and both he and the plaintiff were very experienced in the auto business; (3) that the plaintiff and Callari signed a purchase agreement dated March 15, 1992, to sell the plaintiff's Chrysler/Plymouth agency for $165,000, of which $160,000 was attributed to a covenant by the plaintiff not to compete against the defendants, which covenant referred specifically to a "Chrysler/Plymouth dealership;" (4) that one of the conditions of the contract to sell the plaintiff's business was that he would obtain a Dodge dealership; (5) that after the sale, the plaintiff continued operating at the same address a Dodge dealership under the name of "Dick Fossum's Mill River Motors, Inc., of Stamford" and also continued to repair and service motor vehicles, including CT Page 5238 Chryslers and Plymouths; (6) that Southern New England Telephone Company (SNET) erroneously listed the plaintiff as a Chrysler/Plymouth agency, which was solely a mistake of the telephone company, and corrected by the plaintiff as soon as the error was brought to his attention; (7) that nothing in the covenant not to compete signed by the plaintiff prohibited him from continuing to service and repair used vehicles, including Chryslers and Plymouths; (8) that in the purchase agreement Callari declined the option to buy the plaintiff's inventory of Chrysler/Plymouth parts and tools; and (9) that Callari Auto and Callari failed to pay the plaintiff the monthly payment due on the promissory note for February 1, 1993, and thereafter.
The attorney trial referee reached the following conclusions as a result of his findings of fact: (1) that the plaintiff retained the right in the purchase agreement to service and repair vehicles, including Chryslers and Plymouths; (2) that the plaintiff had not violated the covenant not to compete because the covenant applied only to operating a Chrysler/Plymouth agency, not to a Dodge agency, nor to maintaining a service and repair facility; (3) that one of the conditions of sale was that the plaintiff would obtain a Dodge dealership, and the defendants fully realized that the plaintiff would be operating another auto agency at his former address; (4) that the defendants' claim, introduced for the first time at trial, that the plaintiff had failed to provide them with a customer list, was unproven;[2]
(5) that neither party had proved a violation of CUTPA; and (6) that judgment should enter in favor of the plaintiff on the two breach of contract counts for $80,000, plus interest at 6% per annum from March 29, 1993, plus late charges of $4,000, plus attorney's fees in the amount of $25,807, which were found to be fair and reasonable, that judgment should enter in favor of the defendant on the third count of the complaint alleging a CUTPA violation, and in favor of the plaintiff with regard to the defendants' counterclaim.
The defendants, pursuant to Practice Book § 438, moved to correct the report to reflect that: (1) the plaintiff held himself out to the general public as an authorized Chrysler/Plymouth dealer by advertising in the yellow pages of the telephone book and in local newspapers, which constituted a violation of his covenant not to compete; (2) such advertising was not a mistake by the telephone company, but constituted deliberate and intentional conduct on the part of the plaintiff to compete with the defendants; (3) although the plaintiff was CT Page 5239 entitled by the sales agreement to service existing customers, he went beyond this and held himself out as a Chrysler/Plymouth dealership; (4) the covenant not to compete included the plaintiff's prior Chrysler/Plymouth customers and his sales and service business; (5) the parties intended that the plaintiff would not service Chrysler/Plymouth vehicles, and was limited to acting as a Dodge dealer only; (6) the plaintiffs actions in holding himself out as an authorized Chrysler/Plymouth dealer was intentional, wanton and malicious in violation of CUTPA; and (7) judgment should enter in favor of the defendants with respect to the promissory note because the plaintiff breached his covenant not to compete, and the defendants should be awarded $20,000 in punitive damages pursuant to CUTPA.
In response to the motion to correct filed by the defendants, the attorney trial referee declined to make any corrections to his report or to his recommendation that judgment enter in favor of the plaintiff.
The defendants filed exceptions to the referee's report pursuant to Practice Book § 439, and properly included the required transcript of the evidence that was introduced at the trial. The exceptions contend that the referee was in error in failing to find those facts referred to in the defendants' motion to correct, and in failing to conclude that the plaintiff should not collect on the promissory note in question because he breached his covenant not to compete against the defendants. The essence of the defendants' position was clearly stated by Callari when he testified on cross examination: "Q. So are you now saying then that Mr. Fossum was not entitled to service Chrysler and Plymouth vehicles under the non-competition covenant? A. That's correct."
As to this court's scope of review of an attorney trial referee's recommendations regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Enfield,210 Conn. 705, 714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. See also Practice Book § 440. CT Page 5240
Therefore, the first issue is whether the referee's factual findings are supported by the record. A review of the transcript indicates that there was sufficient credible support in the record for the factual findings made by the referee.[3]
Although evidence to the contrary was presented at trial, it is axiomatic that "[where] evidence is in conflict, its probative value is for the trier of fact to determine." Bernard v.Gershman, supra, 656. It appears from reviewing the defendants' motion to correct and their exceptions to the report, that the defendants are attempting to substitute their own version of the facts for those found by the referee, a practice discountenanced in Argentinis v. Gould, 23 Conn. App. 9, 19, 579 A.2d 1078, rev'd on other grounds, 219 Conn. 151, 592 A.2d 375 (1991).
In addition to determining whether "there was . . . evidence to support the attorney trial referee's factual findings," the second task of the reviewing court is to decide whether "the conclusions reached were in accordance with the applicable law."Thermoglaze, Inc. v. Morningside Gardens, Co., 23 Conn. App. 741,746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153
(1991). As was noted, the defendants did file objections to the acceptance of the referee's report, Practice Book § 440, reiterating their contention that the referee had erred in determining that the plaintiff had not breached the covenant not to compete, and therefore the plaintiff was entitled to recover on the promissory note executed by Callari Auto and guaranteed by Callari. As pointed out by the referee, however, the restrictive covenant states that the plaintiff is not permitted to "have an interest in, be associated with, or otherwise engage in the business of Chrysler/Plymouth automobile dealership." The referee found that the plaintiff's operation of a Dodge dealership did not violate this covenant, nor did his continued operation of a service and repair facility. The referee inquired of the plaintiff whether he had discussed with Mr. Callari "the sale of the service portion of the Mill River dealership" or "Mill River's responsibility as to warranty as to Chrysler/Plymouth automobiles sold by it," to which the plaintiff replied that these topics had never been discussed or negotiated. He did add, however, that these subjects "didn't have to come up because it was not part of the sale, and I knew I had the obligation to Chrysler to continue to, the Chrysler Corporation."
Since the referee's findings of fact have been accepted because they find support in the record, the remaining task as CT Page 5241 noted previously is limited to determining whether his legal conclusions "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v.Gershman, 18 Conn. App. 652, 656, 559 A.2d 1171 (1989); see also Practice Book § 440. The referee heard testimony that the defendants knew that the plaintiff planned to operate a Dodge agency at the same address in Stamford where he had previously operated. The only remaining issue in this case is whether the referee is correct in determining that the parties did not intend to prevent the plaintiff from servicing and repairing other Chrysler Corporation vehicles, such as Chryslers and Plymouths.
"To give meaning to contracts, courts interpret the intent of the parties by construing the whole contract and all relevant provisions together. . . . In construing contract terms, the court seeks to effectuate the intent of the parties. . . . To ascertain the parties' intent, the courts consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish. . . . The intent of the parties is normally a question of fact for the trier . . . which we will not disturb unless it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) Colby v. Burnham, 31 Conn. App. 707, 714, 627 A.2d 457
(1993). "Where the fact finder's conclusions as to intent are based on such factors as the credibility of witnesses and the testimony of live witnesses as to the meaning of a contract or as to the circumstances surrounding the execution of a contract, a question of fact as to intent of the parties exists." Griffin v.Planning Zoning Commission, 30 Conn. App. 643, 650,621 A.2d 1359 (1993).
The referee concluded that under all the circumstances the parties did not intend to preclude the plaintiff from operating a service and repair facility for, among other vehicles, Chrysler Corporation products such as Chryslers and Plymouths. In this regard, it is noted that General Statutes § 14-1(17) defines a motor vehicle "dealer" as: "any person actively engaged in buying, selling or exchanging motor vehicles or trailers who has an established place of business in this state and who may, incidental to such business, repair motor vehicles or trailers, or cause them to be repaired by persons in his employ." Furthermore, note is also taken of the agreement between the plaintiff and the Chrysler Corporation when he procured the Dodge dealership to the effect that the plaintiff was obliged to CT Page 5242 service all Chrysler Corporation products, which would obviously include Chryslers and Plymouths.[4]
After hearing the evidence, including testimony from the defendant Callari, the referee concluded that the plaintiff had not violated the covenant regarding competition with the defendants, and therefore that the note has to be repaid. Based on the standard of review in Dills v. Enfield, supra, 210 Conn. 714, the court cannot agree with the defendants that the attorney trial referee's conclusion that the plaintiff is entitled to recover on the promissory note executed by defendants was unwarranted, illegal or illogical. To the contrary, in the words of Practice Book § 440, his recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, or any other sufficient reason why the report is unacceptable; see Practice Book § 443.
Accordingly, judgment is entered in favor of the plaintiff to recover from the defendants the sum of $80,000, together with interest at the rate of 6% per year, commencing March 29, 1993, to the date of this judgment, which amounts to $10,420.66, plus late charges of $4,000, and attorneys fees of $25,807.50, plus disbursements of $37.43, for a total judgment of $120,265.59.
Statutory costs are to be taxed by the clerk
So Ordered.
Dated at Stamford, Connecticut, this 31st day of May, 1995.
William B. Lewis, Judge